(October 19, 1912.)

ELNORA E. AINSWORTH et al., Appellants, v. P. W. HARDING, Respondent.

[128 Pac. 92.]

EMPLOYMENT OF ATTORNEY — CONTRACT — RELATION — DUTY — TAKING TITLE TO LAND.

(Syllabus by the court.)

1. Where a power of attorney is executed by A. and others to H., appointing H. attorney in fact "in all matters pertaining to or relating to the settlement of my interest, share or portion of the estate of S. . . . . that lawfully comes to me as daughter and heir at law. I hereby authorize, empower and delegate to my said attorney full authority to act for me," it creates a fiduciary relation between the attorney and client.

2. Where an attorney is employed to secure and protect the interests of his client in real property, it imposes upon such attorney good faith, and requires that such duty be not violated, and such duty continues as long as the employment continues, and the obligation of good faith does not end even upon the termination of the contract of employment, but continues thereafter to the extent that if an attorney be retained to defend a particular title to real property he cannot thereafter, unless his client consent, buy the opposing title without holding it in trust for those then having the title he was employed to sustain.

3. In a case where an attorney is employed by a person to secure real property belonging to the client, and in the course of such employment, and before the employment terminates, such attorney secures a supposed interest in such property, and repudiates his fiduciary obligation, and receives in his own name the title to such property he has been employed to secure for his client, such title will be declared to be held in trust for the use and benefit of the client.

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. J. M. Stevens, Judge.

An action to declare a title conveying real property to be held in trust. *Reversed.*

George E. Gray, for Appellants.

The respondent took the title in trust for the appellants, and while acting as attorney for them was forbidden, without their knowledge or consent, from acquiring any interest adverse to his clients in any property obtained by him in settlement of the shares of his clients claimed in the estate of their father. (Secs. 960, 1044, 1053, Pomeroy's Eq. Jur.; *Harper v. Perry,* 28 Iowa, 60; *Shropshire v. Ryan,* 111 Iowa, 681, 82 N. W. 1035; *Kisling v. Shaw,* 33 Cal. 425, 91 Am. Dec. 646; *In re Evans,* 22 Utah, 366, 83 Am. St. 794, 62 Pac. 913, 53 L. R. A. 952; *Shirk v. Neible,* 83 Am. St. 185–187, note; *In re Darlington's Estate,* 147 Pa. 624, 30 Am. St. 776, 23 Atl. 1046; sec. 166, Perry on Trusts; *Eoff v. Irvine,* 108 Mo. 378, 32 Am. St. 611, 18 S. W. 907; *Henry v. Raiman,* 25 Pa. 354, 64 Am. Dec. 705; *Cunningham v. Jones,* 37 Kan. 477, 1 Am. St. 258, 15 Pac. 572; *Keenan v. Scott,* 64 W. Va. 137, 61 S.

E. 807; *Stanwood v. Wishard,* 134 Fed. 959; *Gilbert v. Murphey,* 103 Fed. 520; *Crocheron v. Savage,* 75 N. J. Eq. 589, 73 Atl. 33, 23 L. R. A., N. S., 679; *Palm's Admrs. v. Howard,* 129 Ky. 668, 112 S. W. 1110; *Phipps v. Willis,* 53 Or. 190, 96 Pac. 866, 99 Pac. 935, 18 Ann. Cas. 119; *Levara v. McNeny,* 73 Neb. 414, 102 N. W. 1042.)

The authority of the respondent under his employment was broad enough to include the settlement of the affairs of the estate and the acquisition of the land in controversy for the appellants. (*Wood v. Rabe,* 96 N. Y. 414, 48 Am. Rep. 644; *Rollins v. Mitchell,* 52 Minn. 41, 38 Am. St. 519, 53 N. W. 1020; *Kroll v. Coach,* 45 Or. 459, 78 Pac. 397, 80 Pac. 900.)

Respondent is bound by his declarations against himself and his recognition for nearly a year of his trust relation to the property, as shown in the testimony. (Secs. 236, 237, Jones on Evidence, 2d ed.; 16 Cyc. 1277; *Work Bros. v. Kinney,* 8 Ida. 771, 71 Pac. 477; *Connecticut Mut. Life Ins. Co. v. Smith,* 117 Mo. 261, 38 Am. St. 667, 22 S. W. 623; *Stephenson v. Kilpatrick,* 166 Mo. 262, 65 S. W. 773; *Belknap Hardware Co. v. Sleeth,* 77 Kan. 164, 93 Pac. 580.)

Holden & Holden, for Respondent.

The character of evidence is insufficient to establish a trust. (*Rice v. Rigley,* 7 Ida. 127, 61 Pac. 290, 20 Morr. Min. Rep. 553; *Henley v. Hotaling,* 41 Cal. 22; *Cadman v. Peter,* 118 U. S. 73, 6 Sup. Ct. 957, 30 L. ed. 78; 3 Pomeroy's Eq. Jur., sec. 1197; *Ensign v. Ensign,* 120 N. Y. 655, 24 N. E. 942; *Logan v. Rose,* 88 Cal. 267, 26 Pac. 106; *Wilson v. Parshal,* 129 N. Y. 223, 29 N. E. 297; *Sheehan v. Sullivan,* 126 Cal. 193, 58 Pac. 543; *Cake v. Shull,* 45 N. J. Eq. 208, 16 Atl. 434; *Langer v. Meservey,* 80 Iowa, 158, 45 N. W. 732; *Motherwell v. Taylor,* 2 Ida. 254, 10 Pac. 304; Perry on Trusts, secs. 77, 83, 86, 126, 137; 28 Am. & Eng. Ency. of Law, 2d ed., 888.)

Appellants had no rights in the property as a basis for establishing a trust therein. (*Mandeville v. Soloman,* 33 Cal. 44; *Hosmer v. Duggan,* 56 Cal. 257; *Pittock v. Pittock,* 15 Ida. 426, 98 Pac. 719; *Lawson v. Lawson,* 117 Ill. 98, 7 N. E.

84; *Seymour v. Cushway,* 100 Wis. 580, 69 Am. St. 961, 76 N. W. 769; *Moore v. Horsley,* 156 Ill. 42, 40 N. E. 323; 15 Am. & Eng. Ency. 1198; Perry on Trusts, sec. 215.)

Alleged oral declarations of respondent against himself are wholly inadmissible and ineffectual to overcome the presumption arising in favor of the terms of the written instrument— the deed—under which respondent claims title and ownership of the land. (*Feeney v. Howard,* 79 Cal. 527, 12 Am. St. 162, 21 Pac. 984, 4 L. R. A. 826; 2 Jones, Evidence, 2d ed., 272, 352–354; *Dodge v. Trust Co.,* 93 U. S. 379, 23 L. ed. 920; *Bowen v. Chase,* 98 U. S. 254, 25 L. ed. 47; *Gilbert v. Odum,* 69 Tex. 671, 7 S. W. 510; *Gibney v. Marchay,* 34 N. Y. 301; *McKinnon v. Meston,* 104 Mich. 642, 62 N. W. 1014; *John Hancock etc. Ins. Co. v. Moore,* 34 Mich. 41; *Sherman v. Sandell,* 106 Cal. 375, 39 Pac. 797.)

Respondent was not disqualified from purchasing the land, because the same did not belong to appellants, who had no interests therein. (*Le Conte v. Irwin,* 19 S. C. 554; *Hyams v. Herndon,* 36 La. Ann. 879; *Grayson v. Weddle,* 63 Mo. 523; *Dobbins v. Stevens,* 17 Serg. & R. (Pa.) 13; *Fisher v. McInerney,* 137 Cal. 28, 92 Am. St. 68, 69 Pac. 622, 907; *Caldwell v. Bigger,* 76 Kan. 49, 90 Pac. 1095; *Phillips v. Phillips,* 26 Ky. Law Rep. 415, 80 S. W. 826, 81 S. W. 689; *Carson v. Fogg,* 34 Wash. 448, 76 Pac. 112; *Helms v. Goodwill,* 64 N. Y. 642; *Mitchell v. Colby,* 95 Iowa, 202, 63 N. W. 769; *Davis v. Smith,* 11 Ky. Law Rep. 216, 11 S. W. 810; *Nichols v. Riley,* 118 App. Div. 404, 103 N. Y. Supp. 554; *Brainard v. Singo,* 164 Ala. 353, 51 So. 522.)

Appellants, in no event, are entitled to equitable relief by reason of their laches in bringing this action, and are equitably estopped because of their failure to institute the same until after it became known that respondent, by great effort and expense, had been able to create property in the lands out of a labyrinth of defective titles. (*Williams v. Maxwell,* 45 W. Va. 298, 31 S. E. 909; 1 Pomeroy, Eq. Jur., sec. 419; *Fountain v. Lewiston National Bank,* 11 Ida. 451, 474, 83 Pac. 505.)

STEWART, C. J.—This is a suit in equity instituted by the appellants, Elnora E. Ainsworth, Ida Mulheron and

Anna M. Adams, against the respondent, P. W. Harding, for the purpose of decreeing the title held by the respondent under a deed to be in trust for the use and benefit of appellants to certain real property located in Bingham county in the state of Idaho.

The cause was tried in the district court and findings were made and a decree entered in favor of respondent. This appeal is from the judgment.

In the complaint filed in the district court by the appellants the cause of action is alleged as follows: First, that on or about the 9th day of April, 1905, at Grangeville, in the state of Idaho, one Caleb Squibb died intestate, seised and possessed of a large estate consisting of both personal and real property situated in the counties of Idaho and Bingham, in the state of Idaho, and at his death left surviving the plaintiffs, daughters, and two sons, one Joseph Squibb and one William Squibb, as sole and only heirs; that the defendant is a regularly admitted and practicing attorney at law and a member of the bar of the state of Iowa, engaged in the practice of his profession as such in said state and elsewhere; that in the month of July, 1906, the respondent was employed by the plaintiffs as an attorney at law and attorney in fact and undertook such employment in behalf of the plaintiffs to look after, protect and recover for the appellants any property rights accruing to them by reason of the death of Caleb Squibb, located in the state of Idaho; that in pursuance of such employment, and by reason thereof, and in settlement of the rights of plaintiffs and their interest in said estate, the respondent secured, on or about the 30th day of July, 1906, at Grangeville, in the state of Idaho, a deed of conveyance from Joseph Squibb and William Squibb, sons and heirs with the appellants of the estate of Caleb Squibb, of certain lands in Bingham county, state of Idaho. This deed was duly filed for record on the 6th of August, 1906, in the office of the county recorder and is made a part of the complaint; that it is also alleged that while the defendant took such conveyance of land in his own name as grantee, that in truth and in fact the title so obtained by him was in trust

for the sole use and benefit of the plaintiffs as heirs at law of the estate of Caleb Squibb, deceased; that the defendant disregarded his duty and obligation as such attorney for these plaintiffs, and in violation of the trust and confidence reposed in him and in violation of the trust relation conferred upon him by the conveyance, has without any right or authority ever since the delivery of said conveyance held the said land and the title thereto as his own, and repudiated said trust relation and neglected and refused, and neglects and refuses, to convey said land or any part thereof to the plaintiffs, or to recognize in any way their right, title or interest; that the plaintiffs are the absolute owners of all of said real estate, and are entitled to a conveyance of the same from the defendant and to the possession of the same. It is demanded in the prayer of the complaint that a decree be entered on the complaint herein that the title to the lands described, so held by the defendant, be decreed to be held by him in trust for the benefit and use of the plaintiffs.

The respondent, in his answer to the complaint, admits his employment as alleged in the complaint, and alleges that he thereafter proceeded to the state of Idaho and carefully and completely investigated the records of Bingham and Idaho counties, in Idaho, as well as carefully and completely investigated all other matters and things pertaining to said estate in search of any and all property, either real or personal, if any, belonging to the estate of said plaintiffs' said father, Caleb Squibb, deceased, with a view to, and for the purpose of, ascertaining the nature, kind and extent of the property, and the whole thereof, belonging to said estate, and to protect and secure for the plaintiffs, and each of them, their respective portion or portions of said estate. Respondent also in his answer alleges in substance and effect that he made a thorough investigation and full report to his clients and took the land for himself after full and fair understanding, and with their consent, and that he is now, and for a long time has been, the owner and in the possession and entitled to the possession of the lands in controversy; that the estate of Caleb Squibb consisted solely of personal property,

and that at his death he did not own or possess or have any right, title or interest whatever in or to the lands heretofore mentioned and described; that the defendant ascertained the nature and extent and amount of the estate of Caleb Squibb, and procured for said plaintiffs their entire interest and their share of said personal property in lawful money of the United States in the sum of $420, and paid the whole thereof to said plaintiffs; that prior to the final settlement and termination of defendant's employment, the defendant fully and completely advised and fully informed the plaintiffs of all his acts, doings and efforts in behalf of plaintiffs, and completely informed plaintiffs of the information and knowledge received by the defendant concerning the estate of Caleb Squibb, and that prior to the termination of his employment the defendant purchased of and from Joseph Squibb and William Squibb the lands and premises described and involved in this case; except 80 acres of the tract, said lands were of little value; that the 80 acre tract was worth $50 an acre, and was involved in litigation and encumbrances by tax titles having been acquired upon default of payment of taxes, and would require the expenditure of large sums of money, labor and skill to perfect the defendant's title thereto, and that it was his intention to perfect the title in and for himself, and that the plaintiffs and the defendant had a full and final settlement of all matters and things pertaining to or in consequence of his employment under his contract, and he paid the plaintiffs every dollar, and the whole thereof, which he received for them from said estate, and that his employment was fully and finally terminated; that by reason of such facts the plaintiffs have no claim to said land or title or interest therein. In a cross-complaint filed he asks for affirmative relief declaring respondent the owner of said land, and that the appellants be declared to have no right, title or interest in said land.

The trial court in its findings found in favor of the appellants upon the allegations of the complaint, as to the employment of the respondent, and that the respondent accepted said employment and proceeded to Idaho and made the investiga-

tion of the condition of the estate; the court also found that Caleb Squibb in his lifetime, on February 15, 1905, absolutely and unconditionally conveyed to Joseph Squibb the lands described in the complaint; that such conveyance was absolute and unconditional, and upon such conveyance Joseph Squibb became and was the owner in fee and became vested with an estate in fee simple; that Caleb Squibb did not die seised or possessed of the lands described in the complaint, and that the plaintiffs acquired no right, title or interest therein by reason of the decease of said Caleb Squibb; that on the 30th day of July, 1906, Joseph Squibb and William Squibb absolutely and unconditionally conveyed the same to the respondent; that the conveyance of said lands from Joseph Squibb and William Squibb to the respondent was not made in pursuance of this employment by plaintiffs, or in settlement of any right or interest of plaintiffs in and to the estate of Caleb Squibb, and that plaintiffs, nor none of them, had any right, title or interest in or to said lands or any part thereof; that said lands were not acquired by respondent for the use or benefit of plaintiffs, or either of them, as heirs at law of the estate of Caleb Squibb, deceased.

The question presented by appellants on this appeal is that the evidence does not support the findings and judgment of the trial court. The evidence in support of the appellants' case is principally in writing, and consists in correspondence between the respondent and the appellants with reference to employing the respondent to investigate the condition of the estate of Caleb Squibb in Idaho, and ascertaining what interest the appellants had in such estate, and the making of the contract between the respondent and the appellants, and the execution of the power of attorney by appellants to respondent, and the correspondence of the respondent with the appellants while in Idaho with reference to said property, and oral testimony as to statements made by respondent to different parties as to the nature and character of his employment.

It is proper to state, before referring to the facts, that the respondent did not testify in his own behalf, neither did he

offer any other testimony of any kind or nature in contradiction to the plaintiffs' evidence or in support of the allegations in his answer and cross-complaint, except the presumption which he claims arises from the evidence of the plaintiffs. On July 6, 1906, the respondent wrote a letter to the plaintiffs and in effect stated: "Agreeable to our conversation. . . . In the event of my mission there being unsuccessful on the line of not being able to recover for the Iowa heirs, I would not expect to make any charge for legal services, but would expect only the expenses there and back. . . . . In the event of my being successful in your behalf I would expect a reasonable compensation in addition to the above, bearing in mind that such compensation is to be very reasonable in consideration of the nature of the services I may be able to render and the amount I may be able to recover." Other correspondence occurred, and resulted in the execution of a power of attorney by appellants to respondent, which provides: "My true and lawful attorney to act in my name and stead in all matters pertaining to or relating to the settlement of my interest, share or portion of the estate of Caleb Squibb, late of Grangeville, state of Idaho, deceased, that lawfully comes to me as a daughter and heir at law. I hereby authorize, empower and delegate to my said attorney full authority to act for me, as he, as my attorney, may deem proper, giving him full power and authority, if necessary to bring suit in the state of Idaho or elsewhere, to protect fully my interest in said estate, giving also to him authority to sign my name to all legal papers necessary for the bringing of said suits or for the purpose of making settlements, and to receive for me my share of all moneys coming to me or my proportionate part thereof, and sign my name to all receipts therefor."

In a letter dated Blackfoot, July 17, 1906, the respondent states as follows: "The records show that Caleb Squibb, on February 15, 1905, a short time before his death deeded all his land consisting of 680 acres to his son Joseph. The personal property amounted to about $1625.00. The administrator seems to be using this freely in suits. The old gentleman may have left a farm in Grangeville."

Another letter was sent to appellants by respondent dated Grangeville, July 27, 1906, in which respondent said: "I spent a part of the day examining records in Squibb estate. . . . . Regret to say that report is not favorable. It looks as though all we can get if anything will be like finding it. They doubtless never expected to see me. They were much surprised. Joseph was evidently the object of great solicitude from his father, who conveyed to him his one-half interest in some 1400 acres of land near Idaho Falls a short time before his death and also a valuable 160 acre farm here, the deed to the latter tract being made February 15, 1905. . . . . Whether the deed was ever legally delivered is a question. I am now investigating. Regarding personal property which seems all we can now depend on, there was about $1,600.00. . . . . It now develops that it has dwindled into a very small amount leaving according to their figures a little over $100 each share. . . . . The one-half interest of Joseph Squibb in land obtained by him from Harris and which was subsequently all conveyed to Joseph is in almost a hopeless legal tangle. The suit brought by Caleb Squibb to get this land from Harris was bungled up badly. [Then follows a statement as to the title to this land and the difficulty in the title, etc.] This Idaho Falls land is about all wild, desert, sagebrush land, but most of it is in the irrigation region, and when once irrigated and cleared it is of great value, between $40.00 and $75.00 per acre and is highly productive. It costs about $30.00 per acre to put it in shape and about $10.00 an acre seems to be its value in its present condition. There is an irregularity in the tax title proceedings and really I think I can carve out a title to some of the land. Joseph appears willing to let it go to strangers and in the conference yesterday *I appealed to him that it would only be just and fair to quitclaim to my three clients and let me go ahead and pay off taxes and try and carve out title for them in preference to strangers.* He is to let me know to-day what he will do. I really want to do something for my clients beyond accepting the mere pittance the record shows we are entitled to. . . . . I urged upon Joseph the justice of allowing his sisters the

right of this Idaho Falls land in preference to strangers. I offered the following inducements: *1st, to assist in his defense in a suit against him at Idaho Falls where he is sued for large damages for commission sales of land by a broker.* 2d. To overlook his estate account and to accept what he offers provided he would quitclaim. He is to let me know. If he does not comply with my terms I will sift this matter to the bottom.'' This constitutes the record testimony.

In addition to this record evidence a witness by the name of Job Harker, who resided on a part of the land in controversy in this case, testified for appellants, and among other things stated: ''He spoke of three ladies that were interested in the estate and he was looking after the interest of the heirs. He said they wanted to get it fixed up and they would see Harker about having the place. He said he came there in behalf of the heirs of Caleb Squibb, that he had a quitclaim deed from Joseph Squibb to all the property here in Idaho.''

A witness, Ernest Harker, testified to his acquaintance with Harding, and that he heard the same conversation that Job Harker had with the respondent, and that the respondent said: ''I am here representing the Squibb estate and I am here to make a settlement. . . . . Mr. Joseph Squibb has turned over a quitclaim to me for all the property to make a settlement.'' The witness further testifies: ''He claimed to represent these heirs and also those in the east and he claimed that Joseph Squibb had quitclaimed all the property to him to make settlement and he stated he wanted to settle things up in a satisfactory manner to them and also to us.''

C. O. Jensen also testified that in June, 1907, he had a conversation with respondent and the respondent said: ''That some of the titles were imperfect and that the old gentleman had died and it belonged to the estate; he said the three sisters were entitled to their share of the estate. He told me the title was imperfect, but he would perfect it, and whatever interest there was to be turned over to Squibb he was to turn over their part to the three ladies in Iowa; this included the 80-acre Harker tract.''

It will be observed that these conversations between the witnesses and respondent were almost a year after the time the respondent was at Grangeville and secured the deed to the land, under which he in this action claims title. At that time he seemed to be of the opinion, and so stated to witnesses, that the land covered by the deed from Joseph Squibb to the respondent was in the interests of the appellants, and that both the brothers agreed to such conveyance, and that such land was a part of the father's estate. When these statements were made to such witnesses, the respondent had made no report of his doings since the letters of July, 1906, and there is no evidence in the record at all in any way that he had made any other arrangement with the appellants or reported anything which in any way indicated that he had reached a conclusion different from the conclusion indicated by the letters in July, 1906. These statements of the respondent were to persons who were then in possession of the land, and clearly indicated that the respondent understood that the land was conveyed to respondent for the use and benefit of the appellants, and that respondent in no way made any claim that he himself in his own right had acquired the title. The only statement which in any way indicates or can be construed into a different arrangement or conclusion of the respondent is the allegation in the respondent's answer to the effect that he and Joseph Squibb, on July 30, 1906, made a contract by which the 80-acre Harker tract in controversy was to be transferred, and was in fact transferred, by Joseph Squibb to the respondent as a compensation for services to be rendered by the respondent in defending a suit Joseph was interested in at Blackfoot, and that the remainder of such land was purchased by respondent from Joseph. It will be observed, however, that this allegation in the answer is not supported by any proof whatever. It is a mere statement in the pleadings, and there is nothing in the record to support this plea, and it is the only matter which in any way calls in question the statements made in the respondent's letters above referred to, and is in no way an explanation or alteration of the facts stated in such letters. Such allegation, we believe, shows the contrary, and clearly

shows the result of a determination to ignore the duty imposed upon him by his employment as an attorney, and the betrayal of the trust resulting by reason of the conveyance to him by Joseph Squibb of the lands in controversy.

The contract of employment between appellants and respondent was a fiduciary one, and required on the part of respondent the utmost good faith, candor, fairness, honor and fidelity in all his dealings with the plaintiffs with reference to their rights in the estate of Caleb Squibb, and implied reliance on the ability and integrity of the respondent, and in the controversy arising out of such contract of employment such attorney should be held at all times and under all circumstances to the full measure of what he ought to do. Equity would be of no avail if an attorney, who has been employed to represent a client in securing the rights to which such client is entitled under the law, could profit by withholding his knowledge and skill or by giving false counsel during the continuance of the fiduciary relation, in the highest sense confidential and fiduciary, or by acts of such attorney in securing property or money or other interests in that right which he is employed to secure for the client.

It was the respondent's duty, by reason of his employment, to protect the appellants in all his efforts with reference to the purpose of his employment, and it was a violation of such duty for him to do any act or receive any compensation or advantage while so acting which would in any way mislead or deceive the appellants, or which might result in the appellants being deprived of a legal right which they possessed, although not yet determined. At the time respondent received the deed of conveyance on July 30, 1906, the relation of employment as counsel and client had not terminated, and in the absence of the termination of the fiduciary relation, when such employment was shown, the relation existed, and the burden of proof is on the respondent to show that the same has been terminated. The duty laid upon respondent after his employment imposed good faith, and required that it should not in any way be violated, and that this good faith should be continuous and perpetual as long as the employ-

ment continued, and this obligation of good faith does not end even upon the termination of the contract of employment, but it continues thereafter to the extent that if an attorney be retained to defend a particular title to real estate he can never thereafter, unless his client consents, buy the opposing title, without holding it in trust for those then having the title he was employed to sustain. (*Henry v. Raiman*, 25 Pa. 354, 64 Am. Dec. 703; *Cox v. Sullivan*, 7 Ga. 144, 50 Am. Dec. 386, note; *Smith v. Brotherline*, 62 Pa. 461; *Harper v. Perry*, 28 Iowa, 57; 4 Cyc. 958.)

The respondent in this case is a member of the bar and a practicing attorney of the state of Iowa, and the contract of employment entered into between the respondent and the appellants was made in the state of Iowa. The supreme court of that state, in a number of cases, has been called upon to consider contracts of employment of an attorney, and the duties and responsibilities of an attorney when employed, and in the case of *Harper v. Perry*, 28 Iowa, 57, the court used this language:

"The rules of law governing the transactions of an attorney with his client are most strict, and operate to protect the client from any advantage that may be possessed by the attorney on account of superior knowledge or confidence reposed in him by the client. What the law does not consider unfair dealing between other parties, where no fiduciary relation exists, will frequently not be sustained as between attorney and client. While the relation exists, an attorney is not permitted to take advantage of the client's affairs, against his interests, to make money. The hardship of the doctrine, in its application to particular cases, is not so much regarded as the public mischief which would grow out of lax rules permitting the attorney to take advantage of his position and knowledge and the confidence of his client, in order to make advantageous transactions for himself. No rule, in its application, has a more beneficial effect upon the pecuniary interests, or more effectually promotes the dignity, of the legal profession. It is the source of the utmost confidence in the attorney, and secures to the client services meriting

the most generous rewards.   Its strict enforcement is neces-
sary for the proper protection of the client.   And the courts
will not refrain from its application because the wrong to the
client may not be fully apparent in extent, nor the influence
under which it was wrought entirely understood.

"The application of this rule forbids the attorney to pur-
chase, against the interest of his client, property sold in the
course of litigation, in which he is retained, and such sales
will be held void, or the attorney will be held as the trustee
of his client, and required to account as such.   (*Stockton v.
Ford,* 11 How., (U. S.) 246, [13 L. ed. 682] ; *Henry v. Raiman,*
25 Pac. 354, [64 Am. Dec. 705] ; 1 Story's Eq., sec. 311; *Starr
et al. v. Vanderheyden,* 9 Johns. 253, [6 Am. Dec. 275] ; *Mer-
ritt v. Lambert,* 10 Paige, 358; *Howell et al. v. Ramson et al.,*
11 Paige, 538; *Howell v. Baker,* 4 Johns. Ch. 120; *Armstrong
v. Huston's Heirs,* 8 Ohio, 554; *Wade v. Pettibone,* 11 Ohio,
57, [37 Am. Dec. 408].)"

The same court, in *Shropshire v. Ryan,* 111 Iowa, 677, 82
N. W. 1035, in discussing the same question, says:

"The confidence reposed in the attorney by the client, or
in the trustee by the *cestui que trust,* is so carefully guarded
by the law, that it places the burden of proving the entire
fairness of the pecuniary transactions between them upon the
attorney or trustee."

The respondent being an attorney, it will be presumed, of
course, he was familiar with the law of the state of Iowa and
the decisions of the courts of that state.   The rule above an-
nounced by the Iowa supreme court is the recognized rule
announced and universally adhered to by every court in the
land, and every member of the bar who has taken the oath
of office required generally by the laws of the state is im-
pressed with the solemnity of the obligation of such attorney
to protect his clients in all his efforts with reference to his
employment, and that such attorney shall be faithful to, and
honest in all his actions in relation to, such employment.
(*Kisling v. Shaw,* 33 Cal. 425, 91 Am. Dec. 646; *In re Evans,*
22 Utah, 366, 83 Am. St. 794, 62 Pac. 913, 53 L. R. A. 952;
*Shirk v. Neible,* 156 Ind. 66, 83 Am. St. 150, 59 N. E. 281;

*Darlington's Estate,* 147 Pa. 624, 30 Am. St. 776, 23 Atl. 1046;
*Eoff v. Irvine,* 108 Mo. 378, 38 Am. St. 611, 18 S. W. 907;
*Henry v. Raiman,* 25 Pa. 354, 64 Am. Dec. 705; *Cunningham
v. Jones,* 37 Kan. 477, 1 Am. St. 257, 15 Pac. 572; *Keenan v.
Scott,* 64 W. Va. 137, 61 S. E. 806; *Stanwood v. Wishard,* 134
Fed. 959; *Phipps v. Willis,* 53 Or. 190, 96 Pac. 866, 99 Pac.
935, 18 Ann. Cas. 119; *Lavara v. McNeny,* 73 Neb. 414, 102
N. W. 1042.)

The supreme court of the United States in the case of
*Baker v. Humphrey,* 101 U. S. 494, 25 L. ed. 1065, cites and
reviews a great many cases in which the relation of attorney
and client is considered, involving facts very much of the
character involved in this case. In that case the court said:
"The relation of client and counsel subsisted between the
attorney and Baker. . . . . The bills of the attorney found
in the record show the duration of the connection and the
extent and variety of the items charged and paid for. They
indicate a continuous understanding and consequent employ-
ment. Undoubtedly, either party had the right to terminate
the connection at any time; and if it were done, the other
would have no right to complain. But, until this occurred,
the confidence manifested by the client gave him the right to
expect a corresponding return of zeal, diligence and good faith
on the part of the attorney.

"The employment to draw the contract was sufficient alone
to put the parties in this relation to each other. . . . . But
whether the relation subsisted previously or was created only
for the purpose of the particular transaction in question, it
carried with it the same consequences. . . . .

"It is the duty of an attorney to advise the client promptly
whenever he has any information to give which it is important
the client should receive."

In that same case the court approves the doctrine announced
in *Henry v. Raiman,* 25 Pa. 354, 64 Am. Dec. 705, heretofore
cited in. this opinion, and says:

"It has been held that if counsel be retained to defend a
particular title to real estate he can never thereafter, unless
his client consent, buy the opposing title without holding it

in trust for those then having the title he was employed to sustain."

In commenting on the Henry-Raiman case the court says: "Without expressing any opinion as to the soundness of this case with respect to the extent to which the principle of trusteeship is asserted, it may be laid down as the general rule that an attorney can, in no case, without the client's consent, buy and hold otherwise than in trust, any adverse title or interest touching the thing to which his employment relates. He cannot in such a way put himself in an adversary position without this result. The cases to this effect are very numerous, and they are all in harmony."

The citations given above certainly announce a precise and universal rule, and this rule applies specifically to the facts shown by the record in this case, and when Harding was given a power of attorney by the appellants and the contract of employment was entered into, and the respondent agreed to make an investigation for the appellants with a view of discovering the interest, right and title of the appellants in and to the estate and property belonging to Caleb Squibb at the time of his death and of securing whatever interest the appellants had in said property, it was sufficient to bar the respondent from setting up any claim at law or in equity to any of the property which was owned or possessed by Caleb Squibb at the time of his death, or prior thereto, which in any way was or could be in question in the settlement of the Caleb Squibb estate. And it can make no difference whether the title or interest in said property had been finally determined. The letters written by respondent show clearly that at the time he made his investigation there was a question whether the conveyance from Caleb Squibb to Joseph Squibb was made in good faith or under improper influences or duress, and whether the appellants could recover from Joseph Squibb their share in the estate of Caleb Squibb.

The statutes of this state prescribing the duties of attorneys, among other things, provide:

"2. To maintain the respect due to the courts of justice and judicial officers;

"3. To counsel or maintain such actions, proceedings, or defenses only as appear to him legal or just, except the defense of a person charged with a public offense;

"4. To employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the judges by an artifice or false statement of fact or law;

"5. To maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client." (Sec. 3997, Rev. Codes.)

These high and responsible duties imposed upon an attorney in his employment are in line with the rule that is universally approved and applied in enforcing the respective obligations and responsibilities imposed by a contract of employment, and the courts of this state, in line with the courts of other states, will adhere strictly and firmly to the rule of duty, and will not approve or permit an attorney, who has been employed, and who has undertaken by reason of such employment to protect his client, to obtain a supposed interest in real property of a client, and thereby repudiate his fiduciary obligation and receive in person the property he has been employed to secure for his client, which clearly appears to have been adjudged respondent by the findings and judgment of the trial court.

The judgment in this case is therefore *reversed*. Costs awarded to appellants.

Ailshie and Sullivan, JJ., concur.

Petition for rehearing denied.