(No. 6694.   December 9, 1939.)

CHRIS A. HAGAN and ALFRED E. HAGAN, Respondents, v. WILLIAM S. CLYDE, ETTA M. CLYDE, EARL H. CLYDE and LOLA CLYDE, Appellants.

[97 Pac. (2d) 400.]

Robert W. Peterson, for Appellants.

J. H. Felton, for Respondents.

HOLDEN, J.—Appellants W. S. Clyde and Earl H. Clyde owned 23.97 acres of land in Latah county, hereinafter referred to as the 24-acre tract. They were desirous of purchasing an adjoining 400-acre tract owned by the Thompson estate. The matter of purchasing the large tract was discussed with respondent Chris A. Hagan, and an arrangement worked out whereby Hagan would, and did, purchase the 400-acre tract from the estate and thereupon sell the tract to appellants on a term contract. Accordingly, April 7, 1928, W. S. Clyde and wife, Etta M. Clyde, and Earl H. Clyde, then a single man, by warranty deed conveyed the 24-acre tract to Chris A. Hagan and wife, Harriett B. Hagan, and on the same day Hagan and wife entered into a contract with the Clydes whereby the Hagans agreed to sell and the Clydes agreed to purchase the 400-acre tract as well as the 24-acre tract, for the sum of $34,000, with interest, on or before 10 years from date. That deed, a copy of the contract, together with deeds from the Hagans to the Clydes covering both tracts, were placed in escrow with the First Trust and Savings Bank of Moscow.

The Clydes, being unable to comply with the terms of the 1928 contract, solicited and obtained a cancelation. Thereupon, by agreement of all the interested persons, the escrow

was released by the bank and delivered back to the parties and a full and complete settlement had of all claims of each party to the contract against the other, and then and thereafter a new term contract was entered into for the sale and purchase of both tracts. That contract was dated December 10, 1934, and among other things provided:

"1. That, whereas, the parties hereto have heretofore and on the 7th day of April, 1928, entered into a contract for the sale on the part of the parties of the first part and the purchase on the part of the parties of the second part of the real estate hereinafter described, and the parties hereto having agreed to cancel said contract as of the date set forth herein and to annul such contract;

"2. Now, therefore, for and in consideration of the payments which have already been made upon said original contract, and for and in consideration of the further covenants and agreements herein set forth, it is now agreed by and between the parties of the first part and the parties of the second part that all matters in connection with such original contract are hereby liquidated and forever settled, and that this agreement shall be substituted in place of and instead of such original agreement, and that neither of the parties of the first part nor the parties of the second part are, upon the signing of this agreement, any further obligated upon such original contract dated as aforesaid, and said substituted contract is the following agreement . . . . ''

February 28, 1937, Harriett B. Hagan died. June 27, 1938, the probate court of Latah county distributed her interest in the property—one-half to Chris A. Hagan and one-half to Alfred E. Hagan, a son.

The Clydes defaulted in the payment of certain instalments of the purchase price under the new contract and also in payment of interest and taxes. June 27, 1938, by reason of such defaults respondents served notice of forfeiture of that contract and October 6, 1938, filed complaint to quiet title. Appellants answered the complaint and at the same time filed a cross-complaint. They conceded the Hagans' title to the 400 acres, but alleged the Warranty Deed (by which the Clydes conveyed the 24-acre tract to the Hagans) was given to secure the payment of the purchase price of

the large tract. Respondents answered the cross-complaint, pleading certain payments made by appellants under the new contract and the balance due respondents, principal and interest, after crediting such payments, and alleged the default of appellants in failing to perform certain terms and conditions of the new contract to be done and performed on the part of appellants, and prayed the new contract be strictly foreclosed upon such terms and conditions as the court deemed just and equitable. The case was tried January 21, 1938. March 2, 1938, the court made and filed its findings of fact and conclusions of law and entered a decree thereon against appellants. From the decree this appeal is prosecuted.

Appellants contend the deed to the 24-acre tract was given to secure the purchase price of the 400-acre tract; that consequently the deed, though absolute in form, constituted a mortgage and that the relation of the parties to the original transaction was not changed by the new contract. In *Wright v. Rosebaugh,* 46 Ida. 526, 529, 269 Pac. 98, this court said:

"A fee simple title is presumed to pass by a grant of real property, and, independent of proof, the presumption arises that the instrument is what it purports on its face to be— an absolute conveyance of the land. To justify a trial court in determining that a deed which purports to convey land absolutely in fee simple was intended to be something different, as a mortgage, the authorities are uniform to the point that the evidence must be clear, satisfactory and convincing, and that it must appear to the court beyond reasonable controversy that it was the intention of the parties that the deed should be a mortgage."

To the same effect: *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Shaner v. Rathdrum State Bank,* 29 Ida. 576, 585, 161 Pac. 90; *Johansen v. Looney,* 31 Ida. 754, 762, 176 Pac. 778; *Clinton v. Utah Const. Co.,* 40 Ida. 659, 680, 237 Pac. 427; *Drennan v. Lavender,* 41 Ida. 263, 266, 238 Pac. 532; *O'Regan v. Henderson,* 46 Ida. 761, 763, 271 Pac. 423; *Morrison v. Pierce,* 47 Ida. 430, 437, 276 Pac. 306; *Parks v. Mulledy,* 49 Ida. 546, 551, 290 Pac. 205, 79 A. L. R. 934;

*Investors' Mortgage Sec. Co. v. Hamilton,* 51 Ida. 113, 117, 4 Pac. (2d) 347.

Continuing:

"The trial court is the appropriate tribunal to weigh the evidence and determine whether it is convincing and satisfactory within the meaning of the rule. It has been said that in such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence [as in the instant case], is not open to review in the appellate court."

To the same effect on the last above stated point: *Brown v. Grubb,* 23 Ida. 537, 130 Pac. 1073; *Smith v. Faris-Kesl Const. Co.,* 27 Ida. 407, 150 Pac. 25; *Clinton v. Utah Const. Co., supra; Gould v. Hill,* 43 Ida. 93, 251 Pac. 167; *Portland C. L. Co. v. Hansen L. & F. Co.,* 43 Ida. 343, 251 Pac. 1051; *Intermountain Assn. v. N. H. Hallstrom Coal Co.,* 53 Ida. 151, 22 Pac. (2d) 686; *Mitchell v. Atwood,* 55 Ida. 772, 47 Pac. (2d) 680; *Buchman v. Reynolds Irr. Dist.,* 56 Ida. 507, 513, 55 Pac. (2d) 1314; *Harp v. Stonebraker,* 57 Ida. 434, 438, 65 Pac. (2d) 766; *Beckman v. Waters,* 161 Cal. 581, 119 Pac. 922; *Couts v. Winston,* 153 Cal. 686, 96 Pac. 357.

Furthermore, the new contract provided:

"It is *now* agreed by and between the parties of the first part and the parties of the second part that all matters in connection with such original contract *are hereby liquidated and forever settled* and that this agreement (the new contract) shall be substituted in place of and instead of such original (1928) agreement." (Italics mine.)

The original transaction, whatever it may have been, was thereby fully and completely vacated and annulled and new contractual relations created wholly freed from any and all matters in any way connected with the original transaction.

The trial court found the amount due respondents from appellants and entered a decree therefor entitled "Decree of Strict Foreclosure." The decree gave appellants a specified period in which to pay such amount and then provided if payment was not made within the time so fixed title to both tracts was to be quieted in respondents. Appellants argue the court could not grant strict foreclosure. Assuming, but not deciding, it could not, the trial court, in

the exercise of sound, legal discretion, could, as it did, fix such time as appeared to it under all the facts and circumstances of the case to be just and equitable, within which appellants might pay respondents the balance found to be due them. Hence, that part of the decree granting strict foreclosure may be treated as harmless surplusage. In the exercise of such discretion the court gave appellants nearly seven months in which to pay the balance adjudged to be due respondents. The time so given was ample; therefore, appellants were in no way prejudiced.

It follows the judgment must be affirmed and it is so ordered, with costs to respondents.

Ailshie, C. J., Budge and Givens, JJ., and Reed, D. J., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing or participate in the decision.