704 P.2d 364

The STATE of Idaho, ex rel. Carl C. MOORE, Lloyd F. Barron and Roy I. Strocshein, Idaho Transportation Board, Plaintiff-Respondent-Cross Respondent,

v.

Jesse SCROGGIE, Defendant-Appellant,

Eileen M. Scroggie,
Defendant-Respondent,

Steven F. Bell, Defendant-Appellant,

James F. Lyons,
Defendant-Cross Appellant,

Moorene Peterson, a/k/a Morene Peterson, a widow; and Boundary County, Idaho, Defendants.

Nos. 14526, 14560.

Court of Appeals of Idaho.

Aug. 2, 1985.

**34**

Bruce S. Bistline of Boise and Jon N. Wyman of Wyman & Wyman, Boise, for defendant-appellant, Jesse Scroggie.

Michael J. Verbillis, Coeur d'Alene, for defendant-appellant, Steven F. Bell.

Peter B. Wilson, Bonners Ferry, for defendant-respondent, Eileen Scroggie.

Randall W. Day, Bonners Ferry, for defendant-cross-appellant, James F. Lyons.

Leonard G. Hill of Idaho Transportation Department, Boise, for plaintiff-respondent-cross-respondent, State of Idaho.

## ON DENIAL OF PETITION FOR REHEARING

This opinion supersedes our opinion issued March 26, 1985, which is hereby withdrawn.

SWANSTROM, Judge.

This case was commenced as a condemnation action by the State of Idaho to acquire parcels of land needed for highway purposes in Boundary County. The suit proliferated several cross-claims and counterclaims among the persons purporting to have some interest in the condemned property. By a pretrial order, the district court conducted a limited trial to determine the nature and extent of each party's interest in the property. The court also determined the just compensation to be paid by the state for acquisition of the property, but severed all other issues for a separate trial. After the court issued its memorandum decision and order, a judgment and a final order of condemnation were entered. The judgment was certified as final for purposes of appeal. I.R.C.P. 54(b). Jesse Scroggie, dissatisfied with the district court's ruling that he had no interest in the condemned property, appealed. James Lyons cross-appealed. Steven Bell filed an independent appeal now consolidated with Scroggie's appeal. Bell and Lyons appeal from the trial court's ruling that together they had only a one-half interest in the property. We affirm in part, vacate in part, and remand for further proceedings.

Jesse and Eileen Scroggie were purchasing one of the parcels involved in the action under a contract of purchase from the owner of record, Moorene Peterson. The Scroggies were lessees of an adjoining parcel, owned by a railroad, upon which they had certain improvements. The Idaho Transportation Department sought to acquire these two parcels to build an approach for a new highway bridge in Bonners Ferry, Idaho. Allegedly to facilitate negotiations with the state for a purchase price, Eileen quitclaimed her interest in the parcel they were purchasing to Jesse on October 1, 1979, and, in exchange, received

a promissory note for $10,000 which was to be paid from the proceeds of any sale of the property. Jesse recorded the deed the same day.

On October 22, a divorce complaint was filed by Eileen. After proposing a specific property division, the complaint alleged the following:

> That the parties hereto have agreed to division of the proceeds received from any sale of the above-mentioned businesses on the North Side, Bonners Ferry, Idaho; that each party retains ownership interest in and to said real and personal property and businesses located thereon, pursuant to the agreement. That the terms of the sale include any disposition of the property, including but not limited to eminent domain proceedings. That this provision of the agreement is lodged in the files of James F. Lyons, under the attorney privilege, and is not to be released except with the permission of both the plaintiff and defendant.

Two months prior to her transaction with Jesse, Eileen had contacted James Lyons, of the law firm of Nixon, Nixon, Lyons and Bell, for the purpose of obtaining a divorce. Lyons handled the divorce for Eileen in its early stages, but later "turned it over" to another attorney "to finish it out."

In November, Jesse was charged with the first-degree murder of Eileen's alleged lover. At Jesse's request, Eileen contacted Steven Bell, also of the law firm of Nixon, Nixon, Lyons and Bell,[1] and indicated that her husband had need of an attorney. Bell met with Jesse and agreed to represent him. Lyons, allegedly, also agreed to represent Jesse at the criminal trial. Lyons drafted and took to Jesse a warranty deed conveying the Scroggie parcel to Lyons and Bell. Because there was no other notary available to acknowledge Jesse's signature on the deed, Lyons deleted his own name as a grantee and, as a notary, he acknowledged the deed which purported to transfer the Scroggie parcel outright to Bell. Bell then quitclaimed an undivided one-half interest in this parcel to Lyons. Bell contends that the parcel was conveyed as payment for legal services to be rendered. Jesse, on the other hand, maintains that the parcel was intended only as security for the payment of those services.

Jesse was tried and convicted in May 1980 of first degree murder. In June, Eileen was granted a divorce. Negotiations between the state and Jesse subsequently broke down and the state brought this action to condemn the property.[2] Following a hearing, the district court granted the state possession of the property and ordered it to deposit $76,500 with the court. Jesse was unable to attend this hearing because he was in prison. A second hearing was then held, also in Jesse's absence, at which little was decided. Finally, a third hearing was convened, this time with Jesse present. At this hearing an expert witness called by the state testified that the total value of the property, including the value of the Scroggies' interest in the leased railroad parcel, was $76,500. All of the parties to this action, except Jesse Scroggie, agreed that $76,500 was the fair market value of the property to be condemned. Jesse, contending the property was worth more, insisted upon his right to call an expert appraisal witness in rebuttal. The court reserved this right to Jesse if the court determined that Jesse then had any interest in the property. All of the parties to the action, including Jesse, stipulated that from the money deposited by the state with the court, the court could order disbursement of part of the funds needed to

---

1. At some point during this controversy, Bell disassociated himself from partnership with Lyons. It is not clear when this break occurred; it is, however, inapposite to our opinion.

2. The warranty deed Jesse gave to Bell, like the quitclaim deed Eileen had given to Jesse, described only the parcel being purchased on contract from Moorene Peterson. It is clear from the evidence, however, that the Scroggies' leasehold interest in the railroad parcel was of little or no value without being tied to the adjacent parcel. These two parcels were, in fact, considered by Jesse and Eileen to be one indivisible unit, as shown by the divorce complaint and decree. Accordingly, we will refer to the two parcels simply as "the property."

pay the balance owing to Moorene Peterson on the contract and to Boundary County for all accrued taxes.

The court then held that Eileen and Jesse had become tenants-in-common of the equitable interest in the property. This relationship arose, according to the court, as a result of the quitclaim deed from Eileen to Jesse and an agreement, referred to in the divorce complaint, which allegedly provided that each party was to retain an "ownership interest" in the property. The complaint itself, however, requested that Jesse be awarded the property as his sole and separate property. This, in fact, was done in the final divorce decree. Nevertheless, the court, in the present action, held that Jesse owned only an undivided one-half interest in the property when he executed the warranty deed to Bell. Bell thus took Jesse's one-half interest, half of which Bell quitclaimed to Lyons.

Jesse contends (1) the trial court should have held that the property was his sole and separate property by virtue of both the quitclaim deed from Eileen and the divorce decree, (2) that the transfer of the property from Jesse to Bell was not an outright conveyance, but was intended merely as security for the services to be rendered in the criminal action, and (3) that he was deprived of due process because the district court refused to allow him discovery or to permit him to appear at the two earlier hearings. On the other hand, Bell contends that Jesse had been the sole owner of the property when he deeded it to Bell. He also argues that the warranty deed from Jesse was intended to be a conveyance of title and not merely security for a debt. Finally, respondent Eileen maintains that should we accept Jesse and Bell's contention as to the separate character of the property, we should also impose a constructive trust for her benefit on any proceeds of the condemnation that may be payable to Bell and Lyons.

I

We will first address the contention that the district court erred in determining the rights of the parties in the property and thus in the condemnation proceeds. It is undisputed that Peterson was the record title holder of the one parcel throughout these proceedings. It is also undisputed that Eileen and Jesse, as husband and wife, had a contract to purchase that parcel from Peterson. Therefore, at one point in time, the community held the equitable title of the parcel, while Peterson held the legal title. This arrangement, alas, did not remain so simple.

In October, 1979, as noted above, Eileen quitclaimed her interest in the property to Jesse and, in exchange, received a promissory note for $10,000. She denies that this transaction affected her ownership interest in the property, pointing to allegations in her divorce complaint. However, allegations in a complaint do not necessarily establish the existence of a fact. The avowed purpose of the transaction between Eileen and Jesse was to make negotiations with the state easier by giving Jesse the sole right to bargain. If she had not intended to transfer her interest in the property, she could have accomplished the same purpose by, for example, executing a power of attorney. Therefore, the use of a quitclaim deed here demonstrates an intent on the part of Eileen to relinquish her interest in the property, if not in the proceeds from any future sale. Furthermore, as we discuss below, her interest in the proceeds of the condemnation is based on contract, not on any retained ownership in the property. Thus, as of October 1, 1979, Jesse held the entire equitable title as his sole and separate property.

The transfer from Eileen to Jesse may not have, on the other hand, affected her potential interest in the legal title of the property, which would vest in the Scroggies when the contract with Peterson was completely executed. It has been held that, unless otherwise provided, a quitclaim deed does not transfer after-acquired title. *Scogings v. Andreason*, 91 Idaho 176, 418 P.2d 273 (1966). Thus, if the course of events had taken no more unusual turns, legal title might still have eventually vest-

ed in the community. In that event, Eileen and Jesse would each have had an undivided one-half interest in the property and, therefore, in the proceeds of the condemnation. However, we do not need to decide, and do not decide, whether the quitclaim deed served to transfer all of Eileen's rights and interest under the executory contract with Moorene Peterson.

Eileen filed for divorce. In her complaint she prayed that the property be awarded to Jesse as his sole and separate property. The complaint also referred to an agreement, filed in her attorney's office, which provided for the division of the proceeds from the sale of the property. The complaint further alleged that, pursuant to the agreement, each party was to retain his or her own ownership interest in the property. This agreement is not in the record; it was never produced at trial; there is even some doubt as to whether it was ever fully reduced to writing, except for the promissory note which Eileen already had received. However, at the condemnation hearing, Lyons, Eileen and Jesse all testified without disagreement as to its essential terms. It apparently required Jesse to pay certain community debts from the proceeds of the condemnation and satisfy the note to Eileen. If, however, the sale produced at least $125,000, Eileen and Jesse would each take one-half of the net proceeds.

■ Although Jesse had been represented by an attorney in the divorce proceedings, Jesse eventually allowed his default to be entered. The decree of divorce was entered in June 1980 in magistrate division. In accordance with the divorce complaint, Eileen received certain real estate, including their home. Jesse was awarded the condemned property as his sole and separate property. The magistrate judge went further and "confirmed" the missing agreement to which we referred above. Eileen contends, as the district court in the present case found, that the quitclaim deed from her to Jesse, coupled with the "retained ownership" allegation in the divorce complaint, transmuted

the property from community property to a tenancy-in-common. In light of the divorce decree, however, neither the quitclaim deed nor the divorce complaint have any relevance to Jesse's ownership interest in the property. Regardless of whether the deed and complaint created a tenancy-in-common, and we render no opinion on this question, the divorce decree unequivocally awarded the property to Jesse as his sole and separate property. As a general rule, where a court's decree is clear and unambiguous, neither pleadings, findings nor matters outside the record may be used to change its meaning or construe it. *Evans v. Jensen*, 103 Idaho 937, 943, 655 P.2d 454, 460 (Ct.App.1982); *Parks v. Parks*, 91 N.M. 369, 574 P.2d 588 (1978). The language in the decree confirming the missing agreement can only be a reference to the agreement regarding the division of the proceeds of the condemnation. This interpretation is consistent with the testimony of Eileen and Jesse and effectuates the plain language of the divorce decree.

■ In November 1979, before he received the property via the divorce decree, Jesse gave a warranty deed to Bell. If effective as a conveyance, this deed would have conveyed the after-acquired legal title. *See* I.C. § 55–605. Thus, when the decree awarded Jesse the property and the contract with Peterson was paid as a result of the condemnation, the title would have flowed through Jesse to Bell. Jesse, however, contends that this deed was not intended to be a conveyance, but was merely security for the anticipated costs of his criminal defense.

The district court refused to find that the conveyance from Jesse to Bell was intended as a mortgage. Instead, the court found

that Jesse had conveyed whatever equitable interest he had in the property to Bell (subject to Eileen's one-half division of the net proceeds) in partial payment of Mr. Bell's fees in his attempt to extricate himself from ... the charge of Murder in the First Degree. Therefore, Jesse had

no further interest in such property nor in the proceeds from the sale.

Although the evidence on this issue is conflicting, we can uphold this finding. However, as we later explain, Jesse is at least entitled to an accounting of proceeds received or to be received by Bell and Lyons.

A fee simple title is presumed to pass by a grant of real property. To justify a trial court's determination that a deed purporting to convey land absolutely in fee simple was intended to be something different, as a mortgage, the evidence must be "clear, satisfactory and convincing, and … it must appear to the court beyond reasonable controversy that it was the intention of the parties that the deed should be a mortgage." *Hagan v. Clyde*, 60 Idaho 785, 789, 97 P.2d 400, 401 (1939) (quoting *Wright v. Rosebaugh*, 46 Idaho 526, 529, 269 P. 98, 99 (1928)). The party asserting that the conveyance was not intended to be enforced according to its terms has the burden of proof. *Gem-Valley Ranches, Inc. v. Small*, 90 Idaho 354, 411 P.2d 943 (1966).

Here the court indicated in its memorandum decision that the conveyance was in the nature of a "retainer," that is, in this case, an advance fee payment. We take judicial notice that in criminal cases involving serious crimes such as murder it is a common practice for defense counsel to obtain a substantial "upfront" payment before shouldering the heavy demands of such defenses. This does not mean, however, that once such a payment has been made that it is the end of it so far as the client is concerned. Where the retainer is of the type which is to be applied against fees to be earned in the future, the fees must be earned and all payments made on account of such fees and costs must be accounted for by the attorney. It is in this regard that Jesse has a right to an accounting of the proceeds from the condemnation.

In the cross-complaints and counterclaims filed herein, allegations are made that Bell and Lyons have yet to be paid for certain fees and expenses incurred in their unsuccessful attempts to defend Jesse on the murder charge. Jesse alleges such fees were not earned and that he is entitled to an accounting for payments and transfers of property made by him or in his behalf toward any fees found due Lyons and Bell. As noted earlier, these issues were reserved for a separate trial which, so far as we know, is yet to be conducted.

In that trial, Jesse will have the opportunity to present evidence as to the value of all property transferred to Lyons and Bell in payment of fees. Nor is Scroggie foreclosed from proving, if he can, that the value of the condemned property—as between Scroggie and Bell and Lyons—was actually greater than the value the state and the owners of the property placed upon it in the condemnation proceedings. It must be remembered that Jesse was held in those proceedings not to have an ownership interest in the property. Therefore, he was denied—properly, we have held—the opportunity to contest the condemnation award. If the court determines that the total value of the fee payments exceed the amount of fees earned by Bell and Lyons then Jesse is entitled to reimbursement from his former attorneys of the excess paid.

Pursuant to the parties' stipulation, the trial court has already ordered that Moorene Peterson be paid approximately $29,806 as the balance owed to her by the Scroggies for purchase of the property and approximately $1,510 to Boundary County for taxes. Presumably, about $45,000 remains on deposit with the district court. If Eileen and Bell and Lyons cannot agree upon the division of the remainder of the proceeds, or if the court cannot make disbursement of the proceeds until other remaining issues are decided, then the court may need to determine priority of payment. Eileen has urged we hold that a constructive trust be imposed for her benefit against the proceeds payable to Lyon and Bell to assure payment of her share. *See, e.g., Ainsworth v. Harding*, 22 Idaho 645, 128 P. 92 (1912).

She argues that Lyons initially represented her in the divorce action and dur-

ing the negotiations with Jesse over division of the parties' community property. This occcured when attorney Bell was also a member of Lyon's firm. These assertions are supported by the evidence and they are not contradicted. Indeed, the trial court made a finding that "Lyons and, hence, Bell, by imputed knowledge, were, by virtue of the property settlement agreement, aware that Eileen retained an equitable interest in the proceeds."

Based on these findings and on the undisputed evidence showing an agreement between Jesse and Eileen for payment of a $10,000 note to Eileen from the proceeds, the trial court would be correct in finding a constructive trust should be imposed upon the remainder of the sale proceeds in favor of Eileen. If necessary, the trial court may take additional evidence to determine the full amount of principal, interest, costs and any attorney fees that may be due Eileen on account of the note or on account of the "agreement ... lodged in the files of James F. Lyons." Since payment to Eileen takes precedent over any claims of Bell, Lyons and Jesse Scroggie to the condemnation proceeds, disbursement of Eileen's share need not await the outcome of the accounting between Jesse and his former attorneys.

We have examined each of the other issues raised by these appeals and find them to be without merit.

Except as stated herein, the judgment and the final order of condemnation are affirmed. The cause is remanded for further proceedings consistent with this opinion.

Costs to appellant Jesse Scroggie. No attorney fees awarded on appeal.

WALTERS, C.J., concurs.

BURNETT, J., concurs in part and dissents in part.

BURNETT, Judge, concurring in part and dissenting in part.

I concur in the result except as to the question whether Jesse Scroggie was correctly precluded from presenting evidence on the value of the condemned property. On that point, I respectfully dissent.

Idaho Code § 7–709 provides, in pertinent part, that all persons "having or claiming an interest in [the condemned property] or in the damages for the taking thereof, though not named, may appear, plead and defend, each in respect to his own property or interest, or that claimed by him...." The majority takes the position Jesse Scroggie had no such "interest" because he deeded the property to attorneys representing him in a criminal case, as a retainer for their services. However, as the majority acknowledges, Scroggie still was entitled to an accounting and refund of any difference between the value of the property transferred and the value of professional services rendered. This residual interest in the property is one that Scroggie alone possessed and had a financial incentive to assert. Such an interest, in my view, was sufficient to confer standing under I.C. § 7–709.