## McCAUGHEY v. McDUFFIE et al.

### L. A. No. 1358; December 2, 1903.

#### 74 Pac. 751.

**Mortgage—Deed Absolute.—Where Plaintiff's Land was Conveyed** to M. as security for a loan, to be conveyed by the latter to W., or his order, on repayment of the amount—the agreement being for plaintiff's benefit—evidence held not to support a finding that the reconveyance was conditioned on plaintiff's paying W. a certain additional sum.

**Mortgage—Deed Absolute—Strict Foreclosure.—Where a con-** veyance of land, absolute in form, is intended as a mortgage to secure a loan, a decree of strict foreclosure, vesting title in the grantee upon nonpayment within a specified time, and without a foreclosure sale, will not be made.

APPEAL from Superior Court, Santa Barbara County; W. S. Day, Judge.

Action by Ann Elizabeth McCaughey against M. B. McDuffie and another. Judgment for defendants and plaintiff appeals. Reversed.

Wm. G. Griffith for appellant; C. A. Storke for respondents.

CHIPMAN, C.—Plaintiff sets forth two causes of action: First. That during all the times mentioned in her complaint she was the owner and in possession of certain real estate situate in Santa Barbara county; that on November 9, 1900, defendant McDuffie loaned her $2,000, which she promised to repay, with interest at ten per cent per annum, on or before November 6, 1901, to secure which one Susan McCaughey, who had or claimed some interest in the land, conveyed the same to McDuffie by grant deed, which was, however, executed as, and intended to be, a mortgage, defeasible upon the condition of the payment of said indebtedness and interest; that, to carry out the intention of the parties, defendant McDuffie executed to defendant Wylie, an uncle of plaintiff, a contract in writing agreeing to convey said land to Wylie, or his order, upon the payment to said McDuffie of said sum and interest on or before November 6, 1901; that said contract was executed for,

and intended to be for the benefit of, plaintiff, in respect of which Wylie acted as agent or trustee of plaintiff, and that the intent of said contract was that upon the payment of said sum to McDuffie the said land was to be reconveyed to plaintiff, all of which facts were well known to McDuffie; that on November 6, 1901, plaintiff tendered to McDuffie $2,200 in gold coin, and demanded a reconveyance of said land to plaintiff, and is still ready and willing and able to pay said defendant said sum, but said defendant refused to accept said money or to reconvey said land; that at the time plaintiff demanded of Wylie that he assign said contract to plaintiff, but he refused to do so; that said Susan McCaughey on November 5, 1901, conveyed said land to plaintiff by grant deed; which was duly recorded on November 7, 1901. As a second cause of action, that on November 9, 1900, defendant McDuffie was in possession of said land, claiming title thereto, and on said day executed a contract in writing by which he agreed to convey said land to defendant Wylie, or his order, upon the payment of $2,200. Allegations follow similar to those in the first cause of action as to the meaning of said contract and the intention of the parties thereto; tender of said sum by plaintiff, and demand upon defendants. The prayer is: (1) That said deed be declared to be a mortgage; that said contract be adjudged to be for the benefit of plaintiff and that said Wylie be required to assign said contract to plaintiff. (2) That plaintiff be allowed to redeem said land on payment of said sum to McDuffie. (3) That McDuffie be required to reconvey said land to plaintiff on such payment being made. (4) For the specific performance of said contract according to its intent and meaning, and for general relief.

Defendant McDuffie denies the allegations of the first cause of action. Answering the second cause of action, denies the alleged agency of Wylie, and avers that the only contract entered into with Wylie was the written contract, Exhibit A, set out in the answer, and referred to in the complaint, and denies that it was for the benefit of plaintiff; admits the tender alleged, and demand made for reconveyance, and refusal, but alleges willingness to convey in accordance with the contract, Exhibit A. This contract is signed by McDuffie alone, and purports to be between McDuffie and Wylie, and recites that on the payment to McDuffie of the sum of $2,000 on or

before November 6, 1901, he agrees "to sell to Joseph Wylie, or order," the land in question, and recites as follows: "For this agreement and in consideration thereof, the said Joseph Wylie has paid to me the sum of $200, but said $200 is to be considered as no part of the purchase price of said lands but is simply the consideration for the option hereby given to him by me to purchase said lands. If said Joseph Wylie shall not pay to me on or before the 6th day of November, 1901, said sum of two thousand dollars, then this agreement to be void and of no effect, and I am not to be obliged to sell to him said land . . . . and time is especially agreed to be of the essence of this contract." Defendant McDuffie also filed a cross-complaint, asking to have his title quieted to the land as against all claims of plaintiff. Defendant Wylie, answering, denies plaintiff's ownership and possession of the land; denies that McDuffie loaned her any money; denies that the deed to McDuffie was intended to be a mortgage; admits the execution of the contract by McDuffie, but denies that it was for the benefit of plaintiff, or that defendant Wylie acted as plaintiff's agent or trustee, or that said land was to be reconveyed to plaintiff instead of Wylie; alleges payment by him of $200 to McDuffie for said agreement, and that said agreement was his own individual property; denies that plaintiff made the demand on him alleged in the complaint, or that he refused to assign the contract to plaintiff; alleges that he has expended the sum of $300 of his own money on and about said contract; as an affirmative defense, alleges that he purchased from McDuffie the right to buy said lands for the sum of $200, and, in addition, paid to said Susan McCaughey $100 for said right to buy the lands.

The court found that McDuffie was the owner of the land and in possession and entitled to possession at the commencement of the suit, subject, however, to said contract, Exhibit A; that plaintiff was not the owner, nor entitled to possession, and had no rights in said land, "except those provided for in said agreement and the trust relations existing between her and defendant Wylie"; "that defendant McDuffie did not loan to plaintiff any sum of money, nor did plaintiff borrow of said defendant any money." Other facts explanatory of the transaction as found by the court cannot well be abbreviated, and are as follows: "That prior to the ninth day of

November, 1900, plaintiff and one Susan McCaughey had been the owners of the lands and premises described in the amended complaint herein, but their interests had been on said ninth day of November, 1900, foreclosed and sold, and one Mary Pierce held the sheriff's deed of all the rights of said plaintiff and said Susan McCaughey thereto; that on said day the defendants herein, acting upon the request of said Susan McCaughey, who, having obtained the consent of Mary Pierce to convey the lands in consideration of the amount which she had invested therein, undertook to put it within the power of said Susan McCaughey or the plaintiff, to whom she afterward conveyed her interest in said land, to repurchase said land, and the said defendants and the plaintiff and Susan McCaughey then and there agreed that the defendant M. B. McDuffie should buy the land for the sum of $2,000, and that Susan McCaughey and the defendant Joseph Wylie should pay to said Mary Pierce the excess over $2,000 necessary to procure the conveyance of her interest in said lands; that, in consideration of the premises, and the further consideration of $200 then and there secured by the defendant Wylie, the defendant McDuffie agreed to convey to the said Wylie or to his order on the payment to him of the sum of $2,000 at any time prior to November 6, 1901, the said premises; that all the parties understood the transaction was made and entered into for the benefit of the plaintiff and Susan McCaughey, provided they should pay the said consideration of $2,000, and the additional amounts advanced and expenses incurred in the transaction; that said defendant McDuffie purchased said lands for the sum of $2,000, taking absolute deeds therefor from the said McCaugheys and Mary Pierce, and, in consideration of $200 secured by said Wylie, agreed to convey said premises to him or to his order on or before November 6, 1901, upon the payment to him of the sum of $2,000, all of which was with the consent of the plaintiff and said Susan McCaughey; that, in addition to the payment of the said $200 for the option of purchase, the defendant Wylie furnished $50 of the excess paid to Mary Pierce as aforesaid, and incurred a liability in said transaction of $25 for attorney's fees, $20 to Ramon Malo, a real estate agent, and $15, expense of abstract.'' The court finds the tender to McDuffie as alleged in the complaint, but that plaintiff did not tender to Wylie his alleged additional expenses, and that

for this reason Wylie refused to consent to the execution of the deed by McDuffie, and for like reason the latter refused to make the deed; also that Wylie has not offered to pay the $2,000, the purchase price of said land. As conclusions of law, the court found that the plaintiff tendered McDuffie $2,000, and Wylie $310, within thirty days from March 25, 1902 (the findings are dated April 21, 1902), the date of the announcement of the decision from the bench, and thereupon she will be entitled to a deed to said land, failing in which the title be quieted in McDuffie "as against all claims of the parties hereto." Judgment passed for McDuffie November 1, 1902, quieting his title to the land "against the said plaintiff," but not against Wylie. The appeal is by plaintiff from the judgment, and from the order denying her motion for a new trial.

We do not deem it necessary to present the evidence in detail, nor does the view we take of the case require that the alleged errors of law committed in the course of the trial be passed upon. The court found, and the evidence was, that the McDuffie contract, Exhibit A, was made for the benefit of the plaintiff, and hence whatever right Wylie had under it plaintiff also had. So far as concerned McDuffie, he was tendered all he was entitled to by the terms of the agreement; and whether he held the absolute title to the land as purchaser, or only as security for the money used to redeem from Pierce, it was his duty to reconvey the land to plaintiff when tendered his money and interest, unless he was excused from doing so by the failure of plaintiff to pay Wylie what he (Wylie) claimed to have paid out in the transaction. It appears that to redeem from Pierce required $2,264.65. McDuffie furnished $2,000 of this amount. Mrs. McCaughey and plaintiff got together enough money to pay the balance ($264.65), of which Wylie testified that he furnished $50 of his own money. He also gave a chattel mortgage on two horses to secure the accruing interest on the contract with McDuffie; and the evidence is undisputed that he paid no money to McDuffie, although the contract recites the payment of $200. This $200 interest was tendered by plaintiff to McDuffie, so that, as between McDuffie and Wylie, nothing stood in the way of a deed from the former on payment of $2,000 tendered. Wylie testified that his deal with McDuffie was wholly on his own account, and that plaintiff had nothing to do with it, and had no interest in it or in the option con-

tract. The evidence was clearly to the contrary, and the court found that the contract was made for plaintiff's benefit. Wylie testified: "There is no other agreement than that shown by the deed and that agreement. I don't think Mrs. McCaughey ever saw the original of that agreement before she made the deed in evidence here, dated November 9, 1900." McDuffie testified: "I did not know of any agreement between Mrs. McCaughey and Mr. Wylie in regard to a reconveyance, or in regard to any interest Mrs. McCaughey or Miss McCaughey might have in this transaction." Attorney Storke testified that he drew the rough draft of the contract, and showed it to McDuffie, who made some pencil changes in it; that the same day he also showed it to Mrs. McCaughey and Wylie. But whether this was before or after McDuffie had seen it and made some changes in it does not appear. Mr. Storke testified that it was before deeds had passed to McDuffie. He further testified: "I read her that agreement, and told her that those were the circumstances under which she could act, and she said, 'All right'; and Mr. Wylie came in, I think, at the same time. I wanted her to distinctly understand that the agreement was with Wylie," but that she could make any arrangement she chose with Wylie. It was after this that Wylie advanced $50 to make the amount to be paid to Pierce.

The agreement between McDuffie and Wylie is dated December 15, 1900, more than a month after the deeds were made to McDuffie by Pierce and the McCaugheys. There is evidence showing that, in addition to paying the $264.65 over and above the $2,000 paid to Pierce, plaintiff, through Mrs. McCaughey, was compelled to consent that McDuffie should also have the rentals of the land for the ensuing year; that Wylie was the tenant, and was in possession of the land as such, but the McCaugheys occupied the residence situated thereon. When the tender was made to McDuffie and Wylie to assign the contract to plaintiff, or authorize McDuffie to reconvey the land, Wylie made no demand for any advances, except the $50 claimed by him to have been advanced to Mrs. McCaughey to pay Pierce. The undisputed testimony on this point is by Attorney Griffith, as follows: "I asked Wylie if he had the contract—if he was ready to assign the contract to Ann McCaughey—and he said he was when the money was paid him that she owed him, pointing to Mrs. McCaughey.

He said it was $50. Mrs. McCaughey denied that she owed him $50. We could arrive at no agreement, so I turned to Mr. McDuffie, who was present, and said, 'You refuse, then, to make the deed, do you?' and he says, 'Yes, except on Mr. Wylie's order.' Mr. Wylie said he would not assign the contract to Ann McCaughey unless Mrs. McCaughey paid him the $50. We walked out then.'' He could have referred to no other money than the $50 loaned to Mrs. McCaughey before the deeds were made to McDuffie, and before the contract was signed.

There was some controversy between Wylie and Mrs. McCaughey arising out of the collection by Wylie of the proceeds of the land for the year 1900, and she testified that all but $29 of this $50 had been paid, which fact is not contradicted. She testified (and we think the evidence bears her out) that what she owed Wylie was a matter apart from the agreement relating to the reconveyance of the land, and that Wylie had no right to refuse to assign the contract to plaintiff, and McDuffie had no right to refuse the amount due him.

The finding that Wylie, in addition to furnishing $50 to pay Pierce, "incurred a liability in the transaction of $25 for attorney's fees, $20 to Ramon Malo, a real estate agent, and $15 expense of abstract," has no support in the evidence. The attorney's fee referred to was incurred to Mr. Storke by Mrs. McCaughey, and he presented his bill to her, and it has not been paid. Wylie testified that he "engaged Mr. Storke for an attorney to go and see about getting the place back. I went into his office, and told him that I would pay him for his work." Mr. Storke, however, must have understood that Wylie was acting for Mrs. McCaughey, and that he was to look to her for the services rendered by him, as he presented his bill to her. He said nothing about this item in his testimony, and Wylie made no claim that anything was due him when the tender was made but the $50 referred to above. As to the $20 item to Ramon Malo, and $15 for an abstract, there is no evidence that Wylie incurred any such liability. Whatever services Malo rendered were at the instance of Mrs. McCaughey, and there is no evidence to show who made the abstract, or who became liable for it. Witness Durfee was employed by Mrs. McCaughey to raise the money to pay McDuffie. He met plaintiff and Mrs. McCaughey to find out what money was necessary. He testified: "At that time Mr. Wylie told me that there was $2,200 to be paid to Mr. Mc-

Duffie; there was $25 to be paid to Mr. Storke; there was $15 to be paid for an abstraction; there was $20 for Mr. Malo; then there was a compensation for getting the money. I made it $2,300, or that would leave $40, which would be for my commission and to pay Mr. Perkins. There was nothing said by the defendant Wylie at that time about any money owing him by Mrs. McCaughey. . . . . Mr. Wylie stated that the items given were all there was; that, 'If there is any little business between me and the McCaugheys, that is our business. That has nothing to do with this.' On the 6th of November, 1901 (the expiration of the option), Mr Wylie met me on the street, and told me that there was about $50 that he wanted out of it. That was the first I knew that he wanted anything.'' There is nothing in the evidence to warrant the finding that Wylie had incurred any liability for these items, or that he had a lien on the property, through the McDuffie option, to secure payment. As the money was being raised for plaintiff's benefit, and to redeem this land, the inference is that the liability, if any, was hers.

When Wylie made the contract with McDuffie, it was for the benefit of plaintiff, and the option was given to Wylie, and not directly to plaintiff, as the evidence showed, because he wanted some security for the $200 he had agreed to see McDuffie paid as interest on his $2,000 for the year the option was given to run. There was nothing said about other claims of Wylie, and the evidence clearly shows that neither plaintiff nor Mrs. McCaughey ever understood that they were to do more than pay McDuffie $2,200 in order to get a reconveyance from him, and certainly McDuffie never understood it otherwise. The evidence shows that the $50 advanced to Mrs. McCaughey when she paid Pierce was a loan to her, and nowhere does it appear that she was given to understand when the agreement was made for plaintiff's benefit that it was conditioned on her repayment of this $50. There was evidence that the property was of the value of $4,000 in November, 1900, but this fact is probably immaterial.

The findings of the court on the matters commented upon above are challenged, and, we think, are unsupported by the evidence.

It is advised that the judgment and order be reversed.

We concur; Smith, C.; Haynes, C.

For the reasons given in the foregoing opinion, the judgment and orders are reversed. We add that if, upon another trial, the evidence discloses the same facts as before, the court should find that there was a loan by McDuffie to plaintiff as alleged, and that the transaction was intended as a mortgage of the land to secure the same, and the decree should so declare. The law would not, upon such a finding, warrant a decree of strict foreclosure, vesting title in McDuffie upon nonpayment within a specified time, and without a foreclosure sale: Shaw, J.; Angellotti, J.; Van Dyke, J.