[Civ. No. 5822.  Second Appellate District, Division One.—August 29, 1928.]

J. F. LOBINGIER, Respondent, **v.** HENRY SKINNER, Appellant.

Sloan Pitzer for Appellant.

Nichols, Cooper & Hickson for Respondent.

YORK, J.—The complaint in this action denominates it "an action to quiet title," but it is clear from the facts alleged in the complaint and in the answer and cross-complaint of the appellant Skinner, and from the facts found by the court, which facts were supported by the evidence, that it is nothing more or less than an action to foreclose a mortgage. The legal title to the property in question was vested in the plaintiff by a deed to him dated June 26, 1914, and was made to him for the purpose of securing the payment of certain moneys to the American National Bank of Pomona, which bank had provided the funds to secure this conveyance to plaintiff at the request of Jennie Atkins Carette. She became the equitable owner of the property by virtue of this deed, the title to which was vested in the plaintiff as trustee for her, and title to the same was held by such trustee merely to secure the payment of the funds advanced by the American National Bank of Pomona, the said plaintiff being an officer of that bank. At the time the conveyance was made to plaintiff he executed to Mrs. Carette what was termed a "contract of sale," agreeing to sell the property conveyed to him to Jennie Atkins Carette, the terms of which contract of sale set forth certain promissory notes wherein she promises to pay plaintiff the aggregate sum of $8,059. This contract of sale was made on June 27, 1914, and was in the usual form of contracts of sales of real estate, some of the provisions of which will be re-

ferred to later. The plaintiff, who was such trustee, was in fact acting for Mrs. Carette and the American National Bank of Pomona, and said moneys were due said bank, a fact not appearing in the face of the papers. On October 26, 1917, another contract was entered into by Jennie Atkins Carette and her husband, Charles J. Carette, and the plaintiff, denominated an "agreement supplemental" to that of June 27, 1914, wherein said Carettes agreed to secure the payment of two additional notes made by them and payable to plaintiff in the aggregate sum of $2,620. Said supplemental agreement also provided that plaintiff should be secured thereby in any additional sums due by said Carettes to plaintiff, not exceeding in the aggregate amount $10,500. It was understood by the Carettes that said plaintiff had no personal interest in said transaction and that he was acting for the said bank.

On November 6, 1917, said Carettes entered into another agreement with plaintiff, denominated an "agreement supplemental" to the agreement of June 27, 1914, wherein they, the said Carettes, agreed that $3,350 due from Jennie Atkins Carette to the said Skinner should be secured subject to the liens of the American National Bank of Pomona, which were created by said contract of June 27, 1914, and said so-called supplemental contract of October 26, 1917. Said sum of $3,350 was evidenced by a promissory note of even date, signed by both the Carettes, and payable to said Skinner. These agreements constituted in effect a mortgage in which plaintiff, with his two prior liens, was the first mortgagee and defendant Skinner was the second mortgagee. (Sec. 2924, Civ. Code; sec 744, Code Civ. Proc.) The court finds sufficient facts to sustain a judgment of foreclosure, and adjudges that the plaintiff holds a first lien upon the therein described lands in the sum of $15,346.61, with interest thereon at the rate of seven per cent per annum from the fourteenth day of April, 1925, to the date of payment of the sum prior to any right, title, or interest of any of the defendants; that Henry Skinner (the only appellant) has a second lien thereon in the sum of $3,638.74, with interest thereon at the rate of seven per cent per annum from April 14, 1925, to date of payment, which lien is found by the court to be a second lien and subject to the claim and lien of plaintiff. These are the only liens

to be considered on this appeal. The court then orders the property sold at public auction as one parcel by a commissioner appointed by the court. It then orders the sale to "be made without equity of redemption," and that "upon the completion of said sale the commissioner shall execute a deed to the purchaser at such sale" and that "Henry Skinner . . . and all persons claiming from or under them . . . and subsequent to the filing of the notice of the pendency of the action . . . be forever barred and foreclosed of and from all equity of redemption . . . after the delivery of said commissioner's deed." The commissioner is ordered from the proceeds of the sale to pay, first, the fees and expenses of said sale; second, the costs of suit due the plaintiff; third, to pay plaintiff $15,346.61, with interest from April 14, 1925, at seven per cent per annum, and from the remainder, if any, to pay to said Skinner $3,636.74, with interest at seven per cent per annum from April 14, 1925. The further provisions as to the application of the proceeds of such sale are not material in the consideration of this appeal.

Appellant contends that the demurrer he interposed to plaintiff's complaint should have been sustained because the nonjoinder of parties, in that Charles J. Carette and Jennie Atkins Carette (held herein to be mortgagors) were necessary parties to the action. The case made out is clearly an action to foreclose a mortgage, and the fact that the Carettes had conveyed all their interest in the property to plaintiff before the action was commenced, rendered it unnecessary to make either of them parties as to plaintiff's cause of action. Defendant Skinner filed a cross-complaint and had the opportunity to bring both the Carettes in as parties thereto, but neglected to do so. Not having done so, he cannot, of course, recover a personal judgment against either of them on his promissory note made by them. He could only litigate his claim to priority of lien and a share in the proceeds of the sale.

Appellant's contention that if Jennie Atkins Carette has an interest in said property or the proceeds of the sale thereof, he is entitled to enforce his claim against that interest by reason of the fact that he had a mortgage on the land and her deed to plaintiff did not release Skinner's mortgage therein, though true, is not in point. During the

trial it was not contended that the deed released said Skinner's mortgage. The judgment recognized his lien, but the decree of the foreclosure contains the provision, "It is further ordered, adjudged and decreed that said sale shall be made without equity of redemption," and that "upon the completion of said sale the said commissioner shall execute a deed to the purchaser or purchasers of said property at such sale." ▮ This clause we construed to be a violation of section 700a et seq. of the Code of Civil Procedure, in that said Skinner had a lien on said land by way of mortgage and had a right of redemption from such sale. Rights of redemption are favored in law. (Sec. 2889, Civ. Code.) There was no failure to find upon material issues. The appellant's contention on that point was on matters not material to the adjudication of the case.

▮ Appellant complains that on the twenty-third day of April, 1925, a supplemental complaint was served on appellant and on the twenty-fifth day of April, 1925, he filed written exceptions thereto, and that the supplemental complaint was not filed until the day when the findings and judgment were signed. But this was not a material error. Evidence was received in proof of expenditures made in the care and protection of the property by plaintiff after the commencement of the action, and in accordance with stipulations in the mortgage contract. These were beneficial to appellant, as well as to all parties interested.

▮ The charge of fraud against plaintiff is wholly without foundation. The contract of October 26, 1917, made between plaintiff and the Carettes was for securing an indebtedness due the American National Bank for moneys owed to it by the Carettes which had been loaned them by the bank to care for and improve the property in question. There was no false representation on the part of anyone, and the contract of November 6, 1917, in favor of Skinner was made to secure the indebtedness of Charles J. Carette to the said Skinner if the property should be more than sufficient to pay plaintiff's claim. This contract, as made, specifically stated that the Skinner lien was subordinate to the liens created by the two prior agreements; therefore, citations to sections of the Civil Code and decisions relating to breaches of trust by a trustee are not in point. ▮ The claim that appellant was unduly prejudiced by a notice

of rescission that was given to the Carettes terminating their rights to purchase said property without notice to appellant, and by the quitclaim deed that was made by Carettes to plaintiff without notice to appellant, has no merit or force, in that neither of said acts affected appellant's rights in the premises. Appellant's lien was as effective after as before the said notice was served and said quitclaim deed executed.

After the claim of lien of appellant had been established by contract with the Carettes and plaintiff, appellant, in writing (by his attorney, Sloan Pitzer), authorized the American National Bank to sell about eight acres of said property when it could pay to appellant his proportion of the proceeds of said sale after deducting $1,000 for the said Jennie Atkins Carette; $300 for Edward Winterer (held to be third lien claimant) ; cost of survey, and certificate of title, the balance to be divided between the bank and appellant under a certain contract of June 27, 1914, in proportion to the amount due each under said contract. Here it may be noted that the contracts subsequent to that of June 27, 1914, were considered and treated as supplemental of the original contract. The sale was made for $8,840, and a division of the purchase price was made as follows:

| | |
|---|---|
| Jennie Atkins Carette | $1,000.00 |
| Edward Winterer | 330.00 |
| Henry Skinner | 1,574.00 |
| Taxes paid | 32.38 |
| Certificate of title and recording | 31.80 |
| Applied to Lobingier contract | 5,871.82 |

Or a total disbursed of ............$8,840.00

Appellant now contends that said distribution was not made in accordance with his authorization, and, therefore, that the judgment for plaintiff should have been for a less sum. Appellant testified that he was not consulted before the payments were made—that they did not consult with him before they paid $1,000 to Mrs. Carette; but his written authorization to pay Mrs. Carette that sum is not disputed, and there is no contention as to this payment by anyone but appellant. As to the amount appellant received, he does not specify what he should have received, and there is no evidence that the Carettes received any further proceeds of

said sale. Appellant received from the American National Bank a statement of the disbursements of the proceeds of this sale, a check for $1,574, stated to be his portion, cashed it, and made no objection to the distribution of the proceeds of the sale for several years thereafter.

Appellant contends that an amount paid by plaintiff to restore to plaintiff the title to the property after it had been sold for taxes, and a deed made by the state conveying the title to one J. J. Richart should not have been allowed plaintiff, in that it was, as alleged by appellant, the fault of the plaintiff that the property was sold for taxes. The contract made between the plaintiff and Jennie Atkins Carette, which we hold to have been a mortgage to plaintiff as trustee for the payment of certain moneys to the American National Bank of Pomona, in form a contract of purchase and sale, contained these provisions: "And said party of the second part (Jennie Atkins Carette) further agrees to pay all taxes and assessments of every kind and nature levied or assessed on or against the said premises, and each and every part thereof, from and after the first day of March, A. D. ——, inclusive of the said latter date, and the said party of the first part (Lobingier) hereby agrees to pay all taxes and assessments levied or assessed on or against said premises prior to said date." The circumstances considered by the trial court were that the Carettes were really owners of the property at the time the contract of June 27, 1914, was made; that the respondent had no interest in it; that he took the title to secure an indebtedness to the American National Bank of Pomona, and in the negotiations leading up to the making of the contract nothing was said about plaintiff paying any taxes. Without a year date being stated, as covenant standing alone, it is meaningless. Connected with the evidence taken by the court, it cannot be construed as meaning that it was intended that plaintiff was to be obligated to pay any of the taxes. It was therefore not the fault of the plaintiff that the property was sold for taxes, and he should not be required to deduct the cost of reclaiming it from the holder of the title under the tax sale, from the proceeds of the sale under judgment of foreclosure. The court therefore did not commit an error in adjudicating the amount

due the plaintiff because of the expense of obtaining a deed from the purchaser from the state.

Appellant's contention that plaintiff should not have been allowed interest except on the notes, is not sustained by the evidence. The contract distinctly provides that interest on all sums paid by plaintiff which plaintiff was authorized to pay under the terms of the contract should be repaid to him "together with interest from the date of payment at the same rate of interest as is provided to be paid in the notes hereinbefore set out." The interest was allowed on items where payments had been made in accordance with the said contract.

The contention that the Carettes were to have five days' notice to perform is not founded on the evidence, in that the Carettes requested plaintiff to do the work and make the expenditures, and appellant was benefited rather than prejudiced by the payments made by plaintiff in protecting the property. The contract which was made by and between plaintiff and Charles J. Carette and Jennie Atkins Carette for the purpose of securing the payment of two notes payable to plaintiff, one in the sum of $500 and the other in the sum of $2,120; was denominated a "supplemental agreement" to that of June 27, 1914, and provided for securing the payment thereof on the property described in said contract of June 27, 1914, and "additional sums" advanced by plaintiff to them, not exceeding $10,500. Under this agreement it appears that plaintiff advanced to the Carettes two sums of $75 and $675.

That portion of the judgment which orders the property sold without equity of redemption cannot be sustained. The facts found are so complete in sustaining an action for the foreclosure of a mortgage, which this action was, notwithstanding its denomination, that a new trial is unnecessary, and the judgment will be complete with the correction indicated.

It is ordered that there be and there is hereby stricken from judgment the clause, "that said sale shall be made without equity of redemption," and as so modified said judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.