411 P.2d 943

GEM–VALLEY RANCHES, INC., a corporation, Plaintiff-Respondent, Cross-Appellant,

v.

James SMALL and Ruth Small, husband and wife, Defendants-Appellants, Cross-Respondents and Third-Party Plaintiffs,

v.

SECURITY TITLE INSURANCE CO., a corporation, A. W. Moulton, its President, A. W. Moulton in his individual capacity, and Harold J. Pitkin, Third-Party Defendants.

No. 9554.

Supreme Court of Idaho.

March 8, 1966.

William R. Padgett, Boise, for appellants Small.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondent and cross-appellant Gem Valley Ranches, Inc. and third-party defendants Security Title Ins. Co., A. W. Moulton and Harold J. Pitkin.

TAYLOR, Justice.

This action arose out of a series of transactions between defendants (appellants) Small, husband and wife, and one H. B. Gillingham, Sr. The first transaction occurred on or about September 1, 1962, at which time Small borrowed $18,000 from Gillingham and as security gave Gillingham his promissory note and a quitclaim deed to the Helen Beck ranch property, involved in this action. Thereafter, Small borrowed other sums from Gillingham, making a total borrowed of about $80,000, as found by the trial court. These additional borrowings were represented by promissory notes and were secured by transfers to Gillingham of Small's interest in other properties involved herein. December 7, 1962, these several transactions were merged by an instrument (plaintiff's exhibit 1) entitled "Memorandum of Sale and Option," executed by Small and wife and Gillingham and wife. This document on its face purported to be an outright purchase and sale of the title or interest of the Smalls in three ranch properties in Elmore county, known as the Hel-

en Beck, Gladys Beck, and Rudge properties. The contract gave Small an option to repurchase the properties for the sum of $80,000 on or before March 1, 1963. Small was to remain in possession of the property during the life of the option.

Sometime prior to March 1, 1963, Small went to the office of the Security Title Insurance Co. (hereinafter called Title Company) and gave the president and manager of that company, one A. W. Moulton, an order for an examination and report on the titles of the properties involved. At that time Moulton also agreed to help Small find a lender who would loan Small money needed to pay his obligation to Gillingham. Such a lender was not found prior to March 1st, and after considerable negotiation the Title Company, through its president and manager Moulton, purchased Gillingham's interest in the "Memorandum of Sale and Option" for the sum of approximately $82,000, and orally extended Small's option thereunder an additional two weeks. Small continued in his efforts to raise money with which to exercise the option and was again assisted in that effort by Moulton. This effort and assistance by Moulton continued beyond the expiration of the two-week oral extension of the option.

March 19, 1963, the Title Company made demand upon Small for possession of the property.

In the meantime, Moulton organized the Gem-Valley Ranches, Inc., a corporation (plaintiff-respondent and cross-appellant herein), and on March 26, 1963, the Title Company transferred its interest in the properties involved to Gem-Valley Ranches, Inc.

March 29, 1963, following Small's refusal to surrender possession of the property, Gem-Valley Ranches, Inc., commenced this action in ejectment. In his answer, Small affirmatively alleged that Moulton, as president of the Title Company, and as agent for Small, advanced to Small the sum of $82,870 and that that sum was used to exercise the option held by Small under the sale-option agreement with Gillingham, and that the option was exercised in the name of the Title Company at the request of Moulton, and as security for the loan of $82,870. Small also alleged that by agreement with Moulton, as president of the Title Company, on March 1, 1963, he was given a "reasonable time" within which to repay the $82,870, together with other advances made by the Title Company through Moulton in a total amount of $160,729.04; that on April 9, 1963, payment of the total sum advanced by the Title Company was tendered to Moulton and also to his attorney, together with interest thereon, and that Moulton refused to accept the money tendered and demanded in addition thereto the sum of $40,000. Small prayed for an order allowing him six months within which to repay the amounts advanced by the Title Company.

A fourth ranch property known as the Mildren or Corder ranch (not included in the Small-Gillingham contract) was included in plaintiff's action to quiet title and described in its lis pendens. Small claimed to have made a payment of $20,000 upon the purchase price of $115,000 for the Mildren ranch, and acknowledged additional payments thereon made by the Title Company, totaling $56,480. These payments are included in the total amount of $160,729.04, which Small admitted was owing by him to the Title Company, as of April 9, 1963.

The four ranch properties, along with one other not involved herein, had been merged into one farming and ranching unit, and had been operated as such by Small until the appointment of a receiver in this action.

Defendants Small and wife filed a third-party complaint against the Title Company, and A. W. Moulton and Harold J. Pitkin, officers and stockholders. In this complaint Smalls alleged that the moneys paid by the Title Company to Gillingham were paid on behalf of Small and for the purpose of exercising Small's option to repurchase from Gillingham; that Moulton and the Title Company agreed to assist Small in obtaining a loan of $750,000 upon all of the ranch properties involved for the purpose, among others, of obtaining money to repay advances made by the Title Company; that Moulton and the Title Company advanced a further sum of $24,000 to obtain clear title to the Gladys Beck ranch; that Moulton and the Title Company, acting for Small, advanced $56,480 to Walten Mildren to exercise Small's option for the purchase of the Mildren ranch; that Moulton and the Title Company, after entering into the foregoing transaction, organized the Gem-Valley Ranches, Inc., a corporation, and in violation of their fiduciary relationship with Small, and with intent to defraud Small transferred their interests in the ranch properties to Gem-Valley Ranches, Inc.; that the officers and stockholders of Gem-Valley Ranches, Inc., had full knowledge of Small's interest in the ranch properties involved; that as a result of the breach of trust by Moulton and the Title Company, Small was prevented from obtaining financing to complete the purchase of the properties, to his damage in the sum of $450,000.

In the second cause of action in the third-party complaint, Small alleges that the advances made by the Title Company, totaling $190,000, were for the purpose of exercising the options held by Small and that the transfers of contracts and titles to the Title Company were taken as security for the moneys thus loaned to Small; that the Title Company, Moulton, and Gem-Valley Ranches, Inc., have reserved and charged the sum of $30,000 as interest for the loan of $190,000 as of June 1, 1963; and that such interest charge is usurious.

After a motion made by plaintiff for a separate trial of the issues raised by the original complaint and answer, and after counsel had stipulated that the issue raised by plaintiff's complaint and defendants' answer thereto, was the question as to whether the transactions relating to the property in question constituted a sale or a mortgage, the court ordered that issue to be first and separately tried. Accordingly the trial of the issue as to whether plaintiff was a purchaser or mortgagee of the properties involved was tried to the court September 3, 1963.

By memorandum and order dated September 23, 1963, the court determined that transfers and conveyances received by plaintiff's predecessor, the Title Company, were given and received as security for loans made by that company to and on behalf of Small; that as a result thereof the plaintiff was a mortgagee of the properties and not a purchaser. As basis for this decision the court in its order noted that the agreement between Small and Gillingham of December 7, 1962, arose out of loans by Gillingham to Small; that the consideration expressed in the contract was to induce Gillingham to exercise Small's options; that Small was to remain in possession of the property; that property was included in that contract which had been previously deeded by Small to Gillingham, as security; that on the occasion of the transfer by Gillingham to the Title Company, Gillingham, addressing, himself to Moulton, "We were supposed to make $4,500.00 on this deal. How much are you making?" and Moulton's reply, "$900.00." The court observed that this was strange language for a bona fide purchaser to have used. The court further noted that Small had merged the ranch properties into one operating unit on which he had asked Moulton to write title insurance as such operating unit; that there was a wide disparity in the estimated value of the properties and the amounts advanced by Gillingham and the Title Company; that Small claimed to have made payments upon the properties, which had not been disproven, as follows: Helen Beck ranch, $105,000; Rudge ranch, $30,000; Gladys Beck ranch, $6,000 (in subsequent proceedings Small claimed to have paid $20,000 on the purchase price of the Mildren ranch); the transactions between Small and Moulton indicated they considered the transaction a mortgage; Moulton was to write title insurance for the specific purpose of a loan of $750,000 from an insurance company; part of the need for the loan was to exercise the option and pay off Gillingham; that Moulton testified the price which was paid by the Title Company to Gillingham was "fixed primarily between Gillingham and Small," which would indicate that the transaction between Small and Gillingham was recognized as a security transaction; that after the trans-

fers to Title Company, Moulton continued to make advances for Small, and such advances were shown on the letterhead of the Title Company as "advances made on behalf of James Small" (defendants' exh. 8); that Moulton engaged in many negotiations in an attempt to secure a loan for Small, as Small's agent, and did so even after the two-week extension of Small's option had expired; that as late as March 13th Moulton advanced $2,000 on behalf of Small for "a good faith deposit to a mortgage company (Belmont)"; that Moulton and Small were in Denver, on expenses advanced by Moulton, seeking a loan for Small; that the payment to Gillingham, with the knowledge of his previous advances to Small, for a two-week extension of Small's option, coupled with subsequent advances made to Small, would indicate a loan and security transaction; that Gillingham claimed Small owed him a balance after the transfer by him to the Title Company; that Small testified he considered his dealings as security transactions; that Gillingham's deposition, taken in its entirety, leads to the conclusion that he also considered his arrangement with Small, as well as Moulton's, to be a loan; that the large amounts and manner of payments made by Small to prior owners of the properties, with the knowledge of Gillingham, made it inherently improbable that Gillingham, and certainly not Small, ever considered their dealings as constituting a sale of the properties to Gillingham. The court then concluded that the plaintiff, as successor to Title Company and Gillingham, was a mortgagee of the properties involved.

There are other facts revealed by the evidence which tend to support the conclusion of the trial court: (1) Plaintiff's exhibit 1, the Memorandum of Sale and Option, provides that in the event Small exercised the option therein granted, Gillingham will execute such conveyances and assignments as may be necessary to transfer the properties back to Small, but that such transfers and conveyances would be made at Small's expense and without warranty of title, or other obligation on the part of Gillingham; (2) At the time of the agreement to transfer Gillingham's interests to the Title Company, Gillingham acted at Small's request and refused to act or to fix the price for the transfer without Small's concurrence; (3) There was evidence that Gillingham transferred his interest in the properties for about $250,000 less than (or for about one-quarter of) the value it was estimated to have to one in the position of a bona fide purchaser; (4) The record shows that Small was over-extended in his ranch building project and desperately in need of finances to save his investments; (5) Small's original borrowings from Gillingham were evidenced by promissory notes, which were not satisfied or extinguished by the con-

veyances given therewith. And, as we have noted, the subsequent conduct of Gillingham and Moulton indicated that Small's debt survived the December 7, 1962, Small-Gillingham contract, and the March 1, 1963, transfer to the Title Company. Plaintiff took title with full knowledge of all prior transactions.

■ In Dickens v. Heston, 53 Idaho 91, 21 P.2d 905, 90 A.L.R. 944 (1933), this court discussed the tests to be applied in determining whether a conveyance absolute in form is in fact a mortgage. The evidence in this case meets all such requirements.

■ In its memorandum the court noted the applicable rules announced in Hill v. Daugherty, 63 Idaho 12, 115 P.2d 759 (1941), and in Morrison v. Pierce, 47 Idaho 430, 276 P. 306 (1929), that an instrument of conveyance will be construed and enforced according to the purport thereof, in the absence of clear and convincing proof that it was the intention of the parties thereto that. it should be construed otherwise, and that the burden of such proof is on the party asserting that the conveyance was not to be enforced according to its terms. The trial court compared the facts in this case with those involved in Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425 (1951), and Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738 (1955).

In support of its contention that the trial court did not impose upon defendants the burden of clear and convincing proof that the transaction constituted a mortgage, plaintiff cited, among others, the following cases: Clontz v. Fortner, 88 Idaho 355, 399 P.2d 949 (1965); Parks v. Mulledy, 49 Idaho 546, 290 P. 205, 79 A.L.R. 934 (1930); Morrison v. Pierce, 47 Idaho 430, 276 P. 306 (1929); Clinton v. Utah Construction Co., 40 Idaho 659, 237 P. 427 (1925); Shaner v. Rathdrum State Bank, 29 Idaho 576, 161 P. 90 (1916). These were all cases in which the plaintiff brought action to have a conveyance declared to be a mortgage, and in which this court affirmed the decision below. Our attention has not been called to a case in which this court has reversed a trial court determination that an apparent absolute conveyance was a mortgage.

■ question as to whether the evidence is clear and convincing, that a conveyance absolute on its face is in reality a mortgage, is primarily for the trial court. In Wright v. Rosebaugh, 46 Idaho 526, 529, 269 P. 98, 99 (1928), this court said:

"The trial court is the appropriate tribunal to weigh the evidence, and determine whether it is convincing and satisfactory, within the meaning of the rule. It has been said that in such cases, as in others, the determination of that court in favor of either party

upon conflicting or contradictory evidence is not open to review in the appellate court. Beckman v. Waters, 161 Cal. 581, 119 P. 922, quoting from Couts v. Winston, 153 Cal. 686, 96 P. 357, in which many earlier cases are cited."

This statement was quoted with approval in O'Regan v. Henderson, 46 Idaho 761, 271 P. 423 (1928); Parks v. Mulledy, 49 Idaho 546, 290 P. 205, 79 A.L.R. 934 (1930); and in Gray v. Fraser, 63 Idaho 552, 123 P.2d 711 (1942), where Investors' Mortgage Security Co. v. Hamilton, 51 Idaho 113, 4 P.2d 347 (1931), and Hagan v. Clyde, 60 Idaho 785, 97 P.2d 400 (1939), are also cited.

This rule originally taken from California has been more recently applied in that state. In Cowles v. Zlaket (1959), 167 Cal. App.2d 20, 334 P.2d 55, 60, the California court said:

"Whether or not the evidence received is clear and convincing is usually a question of fact for the trial court and upon conflicting evidence it is *not ordinarily open* to review on appeal. Brison v. Brison, 90 Cal. 323, 334, 27 P. 186; Couts v. Winston, 153 Cal. 686, 96 P. 357; Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583; Beckman v. Waters, 161 Cal. 581, 119 P. 922; Garrick v. J. M. P., Inc., 150 Cal.App.2d 232, 309 P.2d 896."

The evidence in this case supports the trial court's conclusion that plaintiff is a mortgagee and not a purchaser.

Subsequently, on February 27, 1964, Small moved the court to find the amount due to the plaintiff on its mortgage, and for,

"an order [g]iving defendants thirty days from the date thereof within which to pay the sum found by the court to be due on said mortgage, and further ordering that if said sum is not then paid, together with proper interest thereon, that plaintiff may proceed to foreclose said mortgage."

After trial of other issues, the court in its judgment dated May 1, 1964, found that there was due to the plaintiff as mortgagee the total sum of $205,040.56, with 8% per annum interest to be charged upon the sums expended by plaintiff. The court reserved for future determination three other credits claimed by plaintiff against defendants. Judgment then provided,

"that defendants are hereby given 60 days from the date hereof * * * to pay to the Clerk of this Court for the use and benefit of plaintiff, the sum of $205,040.56, plus accrued interest at eight percent per annum to the date of payment * * *. Should defendants fail to make such payment within the time stipulated, the said mortgage

shall be deemed foreclosed as of the 61st day from the date hereof \* \*, and title to the real and personal property involved herein \* \* \* shall be quieted from that day forward in plaintiffs against defendants and each of them and any persons who claim title under them."

The judgment also required defendants to pay to the clerk of the court, or secure by surety bond, the sum of $27,779.77, within the sixty-day period, to provide for payment of additional sums claimed by the plaintiff, pending determination by the court of the amount to be allowed on such additional claims.

The continual increase in the amount due plaintiff from the original amount paid to Gillingham, was occasioned by advances made from time to time to make payments required by Small's contracts with the original owners of the properties, taxes and other charges, necessary to prevent forfeitures of those contracts.

Defendants Small did not make payment within the sixty days allowed and appealed from that portion of the judgment decreeing strict foreclosure, and quieting title in the plaintiff.

In a supplemental judgment the court found additional sums due to the plaintiff, making the total sum of $229,-053.33, plus interest, due from Small to plaintiff as mortgagee. The court noted, however, that this supplemental judgment was important only in case Small should prevail upon his appeal, which had theretofore been taken from the decree providing for strict foreclosure and quieting title in plaintiff.

Small relies upon I.C. §§ 6–101 and 6–104, as follows:

"There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. \* \* \*" I.C. § 6–101.

"A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure sale." I.C. § 6–104.

Title 45, Chapter 1, of the Idaho Code also contains provisions which affect the present issue:

"Contracts of mortgage and pledge are subject to all the provisions of this chapter." I.C. § 45–106.

"Notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien." I.C. § 45–109.

"All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void." I.C. § 45–110.

"Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed." I.C. § 45–113.

and in Chapter 9:

"Every transfer of an interest in property other than in trust * * *, made only as a security for the performance of another act, is to be deemed a mortgage, * * *." I.C. § 45–904:

These provisions of the law are controlling in this case. The portion of the degree providing that upon failure of Small to pay the amount found due to the plaintiff within the sixty days allowed, the mortgage was deemed foreclosed, and title was quieted in the plaintiff, was erroneous and must be reversed. Plaintiff relies upon Machold v. Farnan, 20 Idaho 80, 117 P. 408 (1911), and Shaner v. Rathdrum State Bank, 29 Idaho 576, 161 P. 90 (1916). In the Shaner case the transfer was held to be a sale, not a mortgage. What was there said on the present issue was dictum.

In the Machold case plaintiff brought action to have deeds conveying the property to the defendant declared a mortgage, but did not tender payment of the amount due. However, this court noted that the action was treated as one in which permission to redeem was sought. The trial court held the conveyance to be a mortgage; found the amount due thereon; allowed plaintiff ninety days in which to make payment; failing which, title was quieted in the defendant. This court affirmed the judgment and cited Mack v. Hill, 28 Mont. 99, 72 P. 307 (1903), for the proposition:

"that there is no such thing as an action for the sole object of declaring a deed to be a mortgage, as the court will not grant that relief unless the plaintiff shall be willing to have the whole controversy disposed of by offering to redeem from the mortgage so established. * * * [And held] it was proper for the court to find the amount due and to order that it be paid within a reasonable time or, in the event of failure to make payment, that the plaintiff's action be dismissed." 20 Idaho at 85, 117 P. at 409.

In the Machold opinion two California cases are cited: Cowing v. Rogers, 34 Cal. 648 (1868); Cline v. Robbins, 112 Cal. 581, 44 P. 1023 (1896). The decisions in these cases and in the Machold case are in part based upon the proposition that there was

no such an action known to the law as one to have a conveyance absolute on its face declared a mortgage. The courts chose to regard such actions as actions to redeem, and held that the plaintiff must offer or tender redemption, and upon his failure to do so within a time fixed by the court, the action should be dismissed. Thus, the Machold decision quieting title in defendant was not supported by the cases relied upon. In those cases the courts refused to quiet title in defendant, and ordered the cases dismissed on failure of plaintiff to redeem.

It should be noted that the Cline v. Robbins decision followed Boyce v. Fisk, 110 Cal. 107, 42 P. 473 (1895), which in turn cited Cowing v. Rogers, supra. In Boyce v. Fisk, in which a deed was held to be a mortgage, action on the promissory note, thus secured, was barred by the statute of limitation. It is obvious in such a case the court could not order foreclosure of the mortgage. Equity would not permit the plaintiff to quiet his title against the unpaid debt. Hence, a dismissal was the only judgment which could be entered.

■ Under our more modern practice, a party's cause will not be dismissed for a defect of form or procedure. The district court, having jurisdiction both at law and in equity (Const. Art. 5, §§ 1 and 20) will grant all proper relief consistent with the case made, and embraced within the issues tried, whether prayed for or not. I.C. § 10-704; Boesiger v. Freer, 85 Idaho 551, 381 P.2d 802 (1963); McGhee v. McGhee, 82 Idaho 367, 353 P.2d 760 (1960); Smith v. Shinn, 82 Idaho 141, 350 P.2d 348 (1960); Anderson v. Whipple, 71 Idaho 112, 227 P. 2d 351 (1951).

■ Pleadings may be amended, or will be treated as amended, to embrace the issues tried. IRCP rule 15(b).

It is also to be noted that in the Machold case and in the California cases there cited, the effect of the provisions of the sections above quoted from I.C., Title 45, ch. 1, and identical provisions in California law, was not considered. In Harding v. Gillett, 25 Okl. 199, 107 P. 665 (1909), the Oklahoma court refused to follow the California rule announced in Cline v. Robbins, supra, or Decker v. Patton, 120 Ill. 464, 11 N.E. 897 (1887), or Sloane v. Lucas, 37 Wash. 348, 79 P. 949 (1905), and distinguished Martin v. Ratcliff, 101 Mo. 254, 13 S.W. 1051, 20 Am.St.Rep. 605 (1890). The Decker and Martin cases were also cited and relied upon in the Machold case. In its decision the Oklahoma court quotes statutes identical with our I.C. §§ 45–109, 45–110, and 45–113, and also a code provision of similar import to I.C. § 6–101, in support of its conclusion that the right of a mortgagor to redeem cannot be cut off without a foreclosure sale, in a case where the value of the mortgaged property considerably ex-

ceeded the balance due on the mortgage debt.

Under California Civil Code, § 2889, identical with our I.C. § 45–110, the California court refused to enforce contractual agreements forfeiting encumbered property or restraining the right of redemption. Hamud v. Hawthorne, 52 Cal.2d 78, 338 P. 2d 387 (1959); Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583 (1944); Russell v. Zink, 32 Cal.App.2d 566, 90 P.2d 360 (1939); Winklemen v. Sides, 31 Cal. App.2d 387, 88 P.2d 147 (1939); Lobingier v. Skinner, 93 Cal.App. 695, 270 P. 394 (1928); Bonestell v. Western Automotive Finance Corp., 69 Cal.App. 719, 232 P. 734 (1924); Blodgett v. Rheinschild, 56 Cal. App. 728, 206 P. 674 (1922); Wakabashi v. Stafford Packing Co., 186 Cal. 632, 200 P. 392 (1921).

In Blodgett v. Rheinschild, supra, the court said:

"It is an established doctrine that 'what is once a mortgage is always a mortgage,' which means that no agreement in advance to waive the equity of redemption is valid, and that when once it is established that a transaction is impressed with the character of a mortgage the right to redeem will continue until the debt is paid or until the equity of redemption is foreclosed or barred, or duly and sufficiently released. Civ.Code, § 2889." 206 P. at 678.

Syl. "2. Where a conveyance of land, absolute in form, is intended as a mortgage to secure a loan, a decree of strict foreclosure, vesting title in the grantee upon nonpayment within a specified time, and without a foreclosure sale, will not be made." McCaughey v. Mc-Duffie, 141 Cal. XVIII, 7 Cal.Unrep. 175, 74 P. 751 (1903).

Clinton v. Meyer, 43 Idaho 796, 255 P. 316 (1927), is distinguishable from the case at bar. There the court raised a question as to the nature of the vendor's lien involved, but based its decision on the doctrine of stare decisis. See also Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559 (1962).

■ The transaction involved being a mortgage, the judgment of strict foreclosure was erroneous. Small did not consent to strict foreclosure, nor waive his right of redemption. He asked that foreclosure of the mortgage be ordered in event he failed to pay the debt within the time allowed. The judgment should have been for foreclosure as provided by I.C. Title 6, ch. 1. Cf. Reynolds v. Continental Mortgage Co., 85 Idaho 172, 377 P.2d 134 (1962); Jaussaud v. Samuels, 58 Idaho 191, 71 P.2d 426 (1937); Fond v. McCreery, 55 Idaho 144, 39 P.2d 766 (1934); Dickens v. Heston, 53 Idaho 91, 21 P.2d 905, 90 A.L.R. 944 (1933). In Dickens v. Heston this court affirmed the trial court's judgment

which held that defendants have the same rights of redemption as is given by the mortgage statutes.

Plaintiff assigns as error the order of the court denying its motion to reopen and admit rebuttal evidence regarding the alleged disparity between defendant's investment and the amount paid for the property interests by the Gillinghams and their successors in interest.

Plaintiff's motion was supported by affidavit of A. W. Moulton; copies of two deeds in which Small was grantee; two deeds in which Small and wife were grantors; a deed from Rudge and wife to Gillingham; copies of inventory and appraisement and decree of probate court in estate of Linda Small; a livestock lease assigned to Gillingham; a note and chattel mortgage by Small to Gillingham; affidavit by secretary of Legette, Inc., that the stock of that corporation was valueless; affidavit of the secretary of Title Company as to insured value of certain property belonging to Small and encumbrances thereon; and affidavit of one of plaintiff's counsel that he saw Gillingham a few days prior to the time of trial and that in the opinion of counsel he was able to appear and testify at the trial. (Gillingham's deposition was admitted at the trial upon testimony that he had suffered a heart attack and was unable to be present.) Counsel's affidavit further alleges that Gillingham had been negotiating with plaintiff for the repurchase of the property interests conveyed by him to the Title Company, and that, therefore, Gillingham was not a disinterested witness. Except as to the availability and interest of Gillingham as a witness, the evident purpose of the proof thus offered was to rebut the evidence of the amount of Small's investment in the properties transferred by him to Gillingham and plaintiff. The trial judge recited that he had considered all of these documents before denying the motion. It is evident that the judge did not believe that such evidence would change the result. The court may also have determined that such offer of proof and the attack upon the Gillingham deposition was not timely. The pretrial order dated June 24, 1963, recites that the issue to be tried (and which was tried September 3, 1963) was whether the transaction between the parties was a sale or a mortgage. It was upon plaintiff's motion of August 15, 1963, that such issue was first and separately tried. Thus, plaintiff had ample notice of the issue to be tried and was in no position to claim surprise upon the presentation of evidence by Small as to the amount or value of his investment in the property. Disparity between the price paid or debt secured and the value of the property conveyed, is an important element in the determination of the issue as to whether the transaction is a sale or a mortgage. Dickens v. Heston,

53 Idaho 91, 102, 21 P.2d 905 (1933). The motion invoked the sound discretion of the trial court. The showing made is not such as to justify this court in overturning the trial court's ruling. Findley v. Woodall, 86 Idaho 439, 387 P.2d 594 (1963); State v. McConville, 82 Idaho 47, 349 P.2d 114 (1960); State v. Morrison, 52 Idaho 99, 108, 11 P.2d 619 (1932); Hall v. Jensen, 14 Idaho 165, 93 P. 962 (1908); Newman v. United States, 238 F.2d 861 (5th Cir. 1956).

▆▆▆ Plaintiff assigns as error the admission in evidence of defendants' exhibits 8, 10, and 11. Exhibit 8 was a statement, on the letterhead of the Title Company, of money due that company "by virtue of advances made on behalf of James Small." Plaintiff urges that it was a copy and not the best evidence. It was offered on the cross-examination of Moulton, president and manager of the company, who identified the exhibit as a "process" copy. Counsel referred to it as a "photocopy." Moulton testified it was prepared in his office and delivered to Small. Whether he was referring to the original or the copy is not clear. He affirmed the accuracy of the items thereon, and referred to the wording on the exhibit that the advances were "made on behalf of James Small," as inaccurate. The objection that a proper foundation had not been laid, was not made until after the exhibit was admitted, and then only in reference to a subsequent question propounded by the cross-examining counsel. The admission of the exhibit was not erroneous.

▆▆▆ Exhibit 10 was an appraisal of the "James Small stock ranch," by one Turner, an appraiser. This exhibit was also offered on the cross-examination of plaintiff's witness Moulton. The witness had testified to his opinion as to the value of the property involved, and that he had a copy of the appraisal in his possession prior to and at the time he entered into the transaction with Mr. Gillingham. When the exhibit was offered, plaintiff objected on two grounds: (1) It was available but not submitted at pretrial; (2) It was "improper for the purpose of impeachment." As to the first, the trial court correctly ruled that the exhibit was not one, the use of which should have been anticipated at the time of the pretrial conference. As to the second, the document did not tend to "impeach" the witness within the meaning of I.C. R9-1210, because it did not purport to contain statements by him inconsistent with his testimony. However, in the broader sense of impeachment, it did contain representations of value contradictory of the witness' testimony within the meaning of I.C. R9-1209 and IRCP rule 43(b). The California statutes, C.C.P. §§ 2051 and 2052, are the same as our I.C. §§ R9-1209 and R9-1210. In Pierce v. J. C. Penney Company, 167 Cal. App.2d 3, at 9-10, 334 P.2d 117, at 121-122 (1959), the court said:

"As Wigmore [Evidence, 652, § 1000] and McCormick [Evidence, 100, § 47] have pointed out, impeachment by contradiction may be accomplished either by eliciting a contradictory fact on cross-examination or by calling other witnesses in rebuttal. The contradictory evidence may be either direct or circumstantial. But all the authorities seem to take for granted the truism that the contradictory evidence must be *competent* evidence."

The exhibit was competent for the purpose for which it was offered, that is, to contradict the testimony of the witness as to values. If objection had been made that the contents of the exhibit were hearsay, then defendant in order to have the exhibit admitted would have been required to produce the appraiser as a witness in rebuttal. No such objection having been made, the ruling of the court was not reversibly erroneous. The general rule is that where hearsay evidence is admitted without objection, it may properly be considered in determining the facts; the important question being the weight to be given such evidence. Anno., Hearsay—Admission Without Objection, 79 A.L.R.2d 890 at 897, et seq. What was said on this subject in Boise Street Car Co. v. Van Avery, 61 Idaho 502, 520, 103 P.2d 1107 (1940), is not controlling here. We also note that the case at bar was tried to the court without a jury, and in admitting the exhibit the court observed, "the weight of the exhibit will be for the court to determine." On further examination of the witness it was developed that the exhibit contained appraisal of property not involved in this action along with properties here concerned as a unit and unsegregated. This evidence properly tended to diminish the weight to be given the exhibit by the court.

■ Exhibit 11 was the deposition of Gillingham, taken on behalf of the plaintiff, May 20, 1963, at which time counsel for both parties were present and participated. The exhibit was read into the record. Each question and answer was subject to objection and ruling of the court. This was done after Gillingham's physician had testified that the deponent had suffered a severe heart attack August 10, 1963, and although up and about at the time of trial, his condition was such that appearance at the trial as a witness would be detrimental to his health, and contrary to the physician's advice. The deposition was qualified under IRCP rule 26(d) (3). Plaintiff's showing that one of its counsel had seen the witness a few days before the trial, transacting business in a bank, and had also seen him a month after the trial, and that in his opinion the witness had been able to appear personally, was not sufficient to require the court to reopen the trial because of the absence of the witness.

■ Plaintiff contends that parol evidence was not admissible to show that the documents purporting to be absolute conveyances of the land were, in fact, a mortgage. In this state parol evidence is admissible to prove that a conveyance of land, absolute in form, is a mortgage.

"The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a trustee under any trust deed or transfer in trust, or a subsequent purchaser or encumbrancer for value and without notice), though the fact does not appear by the terms of the instrument." I.C. § 45–905.

Smith v. Swendsen, 57 Idaho 715, 69 P.2d 131, 111 A.L.R. 441 (1937); Investors' Mtg. Secur. Co. v. Hamilton, 51 Idaho 113, 4 P. 2d 347 (1931); Wright v. Rosebaugh, 46 Idaho 526, 269 P. 98 (1928); Thompson v. Burns, 15 Idaho 572, 99 P. 111 (1908). Plaintiff cites Smith v. Swendsen, supra, where the rule was apparently limited to cases in which the language of the conveyance was ambiguous or uncertain. Plaintiff would also prohibit the application of the rule in cases where the intention of the parties to make an absolute conveyance is expressed in the instrument. Such limitations would defeat the purpose of the statute in most cases and deny effect to the last phrase thereof: "though the fact does not

appear by the terms of the instrument." Cf. State v. Snyder, 71 Idaho 454, 233 P.2d 802, 33 A.L.R.2d 358 (1951); Larson v. Hinds (Colo.) 394 P.2d 129, 132 (1964)

■ Plaintiff assigns as error the ruling of the court permitting Small to testify as to his intent in the execution of the agreement with Gillingham. The cases cited in support of this assignment, Keane v. Pittsburg Lead Mining Co., 17 Idaho 179, 105 P. 60 (1909); Reconstruction Finance Corp. v. United Distill. P. Corp., 113 F. Supp. 468 (D.C.), aff'd 204 F.2d 511 (2 Cir. 1953); Low v. Low, 255 Ala. 536, 52 So.2d 218 (1951); involved contracts which were not subject to variations by parol evidence. In such cases it was held that parties were bound by the intent expressed in the contract. In this case the intent expressed in the contract is not conclusive on this issue of intent, by reason of the statute (I.C. § 45–905, supra) herein set out and applied. In State v. Snyder, supra, this court said:

"Such intention may be gathered from the instruments themselves and from extrinsic evidence of former and subsequent acts and declarations of the parties which in any wise throw light upon such intention and the real character of the transaction; the instrument itself is not conclusive in this respect." 71 Idaho at 459, 233 P.2d at 805.

Such an expression of intent from the witness stand is comparable to a similar allegation in a verified pleading, and may be regarded as self-serving. However, intent is material and relevant here, and since the statute allows either party to disprove the intent expressed in the contract, and since the rule would allow both parties to testify as to their intent, no harm is done by its admission. The weight to be given such testimony by a party is for the trier of the facts.

Assignments of error made by defendants Small attacking the findings of the court as to the amounts due plaintiff are not considered here, because such assignments are not supported by brief or argument. Weaver v. Sibbett, 87 Idaho 387, 393 P.2d 601 (1964); Batchelder v. City of Coeur d'Alene, 85 Idaho 90, 375 P.2d 1001 (1962).

The judgment to the effect that transactions between the parties constituted plaintiff a mortgagee of the properties described therein, and fixing the amount due plaintiff is affirmed. The judgment granting strict foreclosure, and quieting title in plaintiff upon defendants' failure to redeem within sixty days, is reversed, and the cause is remanded with instructions to the trial court to vacate that portion of the judgment and to enter judgment providing for foreclosure and sale as provided by I.C., Title 6, Chapter 1, and Title 11, Chapters 3 and 4.

Costs to appellants and cross-respondents Small against plaintiff.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.